**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| 800 SOUTH WELLS PHASE II, LLC, | ) ) ) | Case No. 13-36880 (JPC) |
| Debtor. | ) ) ) | **Hearing: November 5, 2014, at 9:30 a.m.** |

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE** that on **Wednesday, November 5, 2014, at 9:30 a.m.**, or as soon thereafter as counsel may be heard, we will appear before the Honorable Jacqueline P. Cox, or any judge sitting in her stead, in Room 680 of the Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, Illinois 60604, and then and there present *Debtor's Motion for Entry of an Order (a)(i) Approving Procedures for the Sale of Debtor's Real Property Free and Clear of all Liens, Claims, Encumbrances, and Other Interests; (ii) Scheduling an Auction; (iii) Approving Form and Manner of Notices Associated with the Auction; (iv) Setting a Final Sale Hearing; (v) Approving Compromise with River City Investors, LLC and Limiting Notice; (b) Approving the Sale to the Purchaser or the Highest or Best Offer at Auction; and (c) Granting Related Relief*, a copy of which is hereby served upon you.

*[Remainder of Page Intentionally Left Blank]*

Dated:  October 27, 2014                    Respectfully submitted,

                                            **800 SOUTH WELLS PHASE II, LLC**

                                            By:      /s/ Harold D. Israel

                                            GOLDSTEIN & MCCLINTOCK LLLP
                                            Harley J. Goldstein, Esq.
                                            Harold D. Israel, Esq.
                                            208 S. LaSalle Street, Suite 1750
                                            Chicago, Illinois 60604
                                            Telephone: (312) 337-7700
                                            Facsimile: (312) 277-2305

                                            *Counsel for the Debtor and Debtor in Possession*

## **CERTIFICATE OF SERVICE**

      I, Harold D. Israel, hereby certify that on October 27, 2014, I caused a copy of ***Debtor's Motion for Entry of an Order (a)(i) Approving Procedures for the Sale of Debtor's Real Property Free and Clear of all Liens, Claims, Encumbrances, and Other Interests; (ii) Scheduling an Auction; (iii) Approving Form and Manner of Notices Associated with the Auction; (iv) Setting a Final Sale Hearing; (v) Approving Compromise with River City Investors, LLC and Limiting Notice; (b) Approving the Sale to the Purchaser or the Highest or Best Offer at Auction; and (c) Granting Related Relief*** to be filed via the Court's ECF system and served upon the parties registered to receive ECF notice or via first class U.S. Mail as indicated on the attached Service List.

                                                                      /s/  Harold D. Israel

## SERVICE LIST

**Via CM/ECF**

Brad Berish on behalf of Creditor River City Investors, LLC
bberish@ag-ltd.com, dbaird@ag-ltd.com

Kurt M Carlson on behalf of Creditor The Private Bank & Trust Company
kcarlson@carlsondash.com, knoonan@carlsondash.com

Harold D. Israel on behalf of Debtor 800 South Wells Phase II LLC
haroldi@restructuringshop.com, seanw@restructuringshop.com

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Colleen E McManus on behalf of Creditor The Private Bank & Trust Company
cmcmanus@carlsondash.com,
knoonan@carlsondash.com;kcarlson@carlsondash.com;asharp@carlsondash.com

Henry B. Merens on behalf of Creditor River City Investors, LLC
hbm@ag-ltd.com

**Via First Class U.S. Mail**

Cook County Treasurer
PO Box 4468
Carol Stream, IL 60197

Datapark
1631 Neptune Drive
San Leandro, CA 94577

Delaware State Treasury
820 Silver Lake Blvd, Suite 100
Dover, DE 19904

Home by Invsco
182 W Lake St Ste 200
Chicago IL 60601

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

JC's United Building Maintenance
165 Easy Street
Carol Stream, IL 60168

Mc Adam Landscaping Inc.
2001 Des Plaines Avenue
Forest Park, IL 60130

RC Mortgage Holdings
144 W Maple Road, Suite 100
Birmingham, MI 48009

River City Investors LLC
c/o Kenneth B Morgan
144 W Maple Rd
Birmingham MI 48009

River City Investors, LLC
3000 Town Center, Suite 2210
Southfield, MI 48075

Secretary of State
Division of Corporations
Franchise Tax
PO Box 898
Dover, DE 19903

Securities & Exchange Commission
New York Regional Office
Attn: George S. Canellos, Regional Direc
3 World Financial Center, Suite 400
New York, NY 10281-1022

Securities & Exchange Commission
Secretary of Treasury
100 F Street, NE
Washington, DC 20549

Standard Parking Corporation
900 N Michigan Avenue
Suite 1600
Chicago IL 60611

The Acquest Group LLC
182 W Lake St., Ste 200
Chicago IL 60691

4831-6713-3468, v.  1

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|   |   |
|---|---|
| In re: | Chapter 11 |
| 800 SOUTH WELLS PHASE II, LLC, | Case No. 13-36880 (JPC) |
| Debtor. | Hearing: November 5, 2014 at 9:30 a.m. |

**MOTION FOR ENTRY OF AN ORDER (A) (I) APPROVING PROCEDURES FOR THE SALE OF DEBTOR'S REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) SCHEDULING AN AUCTION; (III) APPROVING FORM AND MANNER OF NOTICES ASSOCIATED WITH THE AUCTION; (IV) SETTING A FINAL SALE HEARING; (V) APPROVING COMPROMISE WITH RIVER CITY INVESTORS, LLC AND LIMITING NOTICE; (B) APPROVING THE SALE TO THE PURCHASER OR THE HIGHEST OR BEST OFFER AT AUCTION; AND (C) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "*Debtor*"),[1] hereby moves this Court (the "*Motion*") pursuant to sections 363, 1107(a), and 1108 of title 11 of the United States Code (the "*Bankruptcy Code*") and Rules 2002, 6004, 9007, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") for entry of an order: (a) (i) approving procedures (the "*Bidding Procedures*") for the sale (the "*Sale*") of the Debtor's parking lot property located at 800 South Wells Street in Chicago, Illinois (the "*Property*") pursuant to section 363 of the Bankruptcy Code to CMK Group, LLC, or its designee or assignee (the "*Purchaser*") subject to higher and better offers (the "*Procedures Order*"); (ii) scheduling an auction (the "*Auction*"); (iii) approving the form and manner of notices associated with the Sale and Auction; (iv) scheduling a final hearing (the "*Final Hearing*") to consider approval of the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Purchase Agreement (as defined below).

Sale of the Property; (v) approving the compromise with RCI (as defined herein) pursuant to Rule 9019 of the Bankruptcy Rules and limiting notice; (b) approving the Sale to the Purchaser or the highest or best offer at the Auction (the "*Sale Order*"); and (c) granting related relief. In support of this Motion, the Debtor respectfully states as follows:

### Jurisdiction and Venue

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

3. On August 19, 2013 (the "*Petition Date*"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "*Chapter 11 Case*"). The Debtor's case was previously jointly administered with the chapter 11 cases of Lake Dearborn, LLC; Dearborn Residential, LLC; Dearborn Retail, LLC; DR Dearborn Investment, LLC; La Salle Commercial, LLC; and Invsco Employee Services, Inc. (the "*Former Debtors*") under Case No. 13-36813 (JPC) (the "*Lake Dearborn Docket*").

4. On June 3, 2014, the Former Debtors' chapter 11 cases were dismissed at their request [Lake Dearborn Docket No. 200].

5. On June 10, 2014, the Court entered an order terminating joint administration based upon the dismissal of the Former Debtors' chapter 11 cases [Lake Dearborn Docket No. 205]. The Debtor is the only remaining entity in bankruptcy.

6. The Debtor continues to operate its business and manage its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      No trustee, examiner, creditors' committee, or other official committee has been appointed in the Debtor's Chapter 11 Case.

### A.      **Prepetition Debt**

8.      On or about March 22, 2001, The Debtor, along with River City Holdings, LLC; River City Residences, LLC; River City Marina, LLC; and 800 South Wells Phase I, LLC (collectively, the "*Borrowers*"), executed that certain secured promissory note (the "*Note*"), in favor of River City Investors, LLC ("*RCI*") in the original principal amount of $2,000,000.00. The Note is secured by liens on the Property evidenced by (i) that certain Fourth Mortgage and Security Agreement With Assignments of Rents dated March 14, 2001 executed by each of the Borrowers in favor of RCI, recorded as (a) Document No. 10245102 filed with the Cook County Recorder of Deeds on March 28, 2001 and (b) Document No. 900918009 filed with the Cook County Recorder of Deeds on January 9, 2009, and (ii) that certain Fourth Assignment of Leases and Rents dated March 22, 2001 executed by Borrowers in favor of RCI, recorded as Document No. 900918008 filed with the Cook County Recorder of Deeds on January 9, 2009.

9.      Borrowers' obligations to RCI pursuant to the Note are also governed by (i) that certain Forbearance Agreement dated December 31, 2008 by and among the Borrowers and RCI, (ii) that certain Settlement Agreement and Mutual General Release dated September 1, 2012 by and among the Debtor, Nicholas Gouletas, RC Mortgage Holdings, LLC, Chicago Title Company, LLC, and RCI (the "*2012 Settlement*"), and (iii) that certain Agreement dated April 18, 2013 by and among the Debtor, Nicholas Gouletas, AIGL Development Company, LLC, RCI, and RC Mortgage Holdings, LLC and acknowledged by The Acquest Group, LLC (the "*2013 Agreement*," and collectively with the 2012 Settlement, the "*RCI Settlement Documents*").

4828-5989-0974, v. 7                                          3

10. On August 18, 2014, RCI filed Proof of Claim No. 1-1 in the Chapter 11 Case in the amount of $7,593,108.00 (the "*RCI Proof of Claim*").

11. In or about November 2009, the Debtor and Home by Invsco, Inc. ("*HBI*") entered into and recorded that certain second mortgage, assignment of leases and rents, and security agreement against the Property (the "*HBI Mortgage*") to secure an indebtedness of $2,177,000.00. HBI is an insider of the Debtor and will release the HBI Mortgage in the Procedures Order.

B. **Sale of the Property**

12. On July 21, 2014, the Debtor filed its *Application to Employ Millennium Properties R/E, Inc. as Real Estate Broker* [Docket No. 17]. On July 24, 2014, the Court entered an order granting the *Debtor's Application to Employ Millennium Properties R/E, Inc. as Real Estate Broker* [Docket No. 21]. Millennium Properties R/E, Inc. ("*MPI*") marketed the Property with signage, on the internet (through LoopNet), and through a direct-mailing campaign to over 1,000 parties. MPI has provided around 40 entities with a diligence packet and received approximately five offers on the Property.

13. Subject to the approval of the Court, the Debtor has entered into a purchase agreement (the "*Agreement*"), dated October 24, 2014, with the Purchaser for the purchase of the Property. A copy of the Purchase Agreement is attached hereto and incorporated herein as Exhibit A.

14. The primary terms of the Purchase Agreement are as follows:

| Purchaser | CMK Group, LLC, or its assigns or nominees |
|---|---|
| Seller | 800 South Wells Phase II, LLC |
| Purchase Price | $4,872,000.00 (the "*Stalking Horse Bid*") |

| Acquired Property | That certain land parcel located at 800 South Wells Street, Chicago, Illinois 60607 |
|---|---|
| Assumed Liabilities | None |
| Deposit | $243,600.00 (5% of the Stalking Horse Bid), due within three days of the execution of the Purchase Agreement |
| Closing | Fifteen days following the entry of an order of the United States Bankruptcy Court for the Northern District of Illinois approving the Purchase Agreement (the "*Closing Date*") |
| Bidding Procedures | As set forth in the Bidding Procedures and described herein, the Purchaser's bid for the Property will be subject to higher and better bids, and if bids meeting certain criteria are received, the Auction will be held. If an alternative deal is approved and consummated, Purchaser may be entitled to the Break-Up Fee (defined below) in the amount of $146,160.00 (3% of the Stalking Horse Bid). The initial overbid for the Property must be $178,000.00 higher than the Stalking Horse Bid (i.e. $5,050,000.00 or higher). Following the initial overbid, the minimum bid increment will be $25,000.00 or higher. |

## **Relief Requested**

15. By this Motion, the Debtor respectfully requests that this Court enter an order: (a) (i) approving the Bidding Procedures for the Sale of the Property pursuant to section 363 of the Bankruptcy Code to the Purchaser; (ii) scheduling the Auction; (iii) approving the form and manner of notices associated with the Sale and Auction; (iv) scheduling the Final Hearing to consider approval of the Sale of the Property; (iv) approving the compromise with RCI pursuant to Bankruptcy Rule 9019 and limiting the notice required; (b) approving the Sale to the Purchaser or the highest or best offer at the Auction; and (c) granting related relief.

**Basis for Relief**

A.   **Proposed Bidding Procedures for the Sale of the Property**

16.   In order to ensure that value is being maximized, the Debtor has provided that the Purchase Agreement be subject to higher and better offers (with the Auction occurring if a higher bid is received from a Qualified Bidder). The Bidding Procedures attached hereto and incorporated herein as Exhibit B are designed to govern this process.

17.   The Bidding Procedures are designed to create a controlled, but also fair and open, bidding process that promotes interest in the Property by financially capable, motivated bidders who are likely to close a transaction, while simultaneously discouraging non-serious offers and offers from entities whom the Debtor does not believe are sufficiently capable or likely to actually consummate a transaction. The Debtor therefore respectfully requests that the Court approve the Bidding Procedures at the initial hearing on the Motion.

18.   Inherent in approving the Bidding Procedures is the approval of the Purchaser as the stalking horse bidder and approving the $146,160.00 (3% of the Stalking Horse Bid) break-up fee (the "*Break-Up Fee*") contemplated in the Purchase Agreement. *See* Purchase Agreement at § 14(n).

19.   Approval of the Break-up Fee is governed by standards for determining the appropriateness of bidding incentives in the bankruptcy context established by the Third Circuit in *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527 (3d Cir. 1999). In other words, the allowability of break-up fees ". . . depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *In re O'Brien*, 181 F.3d at 535.

20.	After considering the reasonableness of bidding incentives, courts have approved a range of break-up fees and/or expenses as a percentage of the purchase price as being appropriate under the facts and circumstances of the case. *See, e.g., In re Fairview Ministries, Inc.*, Case No. 11-04386 (SPS) (Bankr. N.D. Ill. Mar. 17, 2011) (approving a 2.9% break-up fee); *In re Brown's Chicken & Pasta, Inc.*, Case No. 09-49094 (JPC) (Bankr. N.D. Ill. Oct. 20, 2010) (approving a 3.5% break-up fee); *In re SK Hand Tool Corp.*, Case No. 10-28882 (ERW) (Bankr. N.D. Ill. July 9, 2010) (approving break-up fee of up to 4.4%); *In re Hartmarx Corp.*, Case No. 09-02046 (BWB) (Bankr. N.D. Ill. June 2, 2009) (approving a 3.1% break-up fee). The Break-up Fee proposed in this matter, 3% of the Stalking Horse Bid, is within the range of acceptable break-up fees in this district.

21.	Further, the Break-Up Fee was negotiated at arms-length, is part of the inducement for the Purchaser's willingness to undertake the diligence necessary to act as a stalking horse bidder here, and approval of the Break-Up Fee is a condition to the Purchaser's obligations under the Purchase Agreement. Moreover, the only situation where the Break-Up Fee would be paid is a situation where an alternative bidder closed on a transaction where it paid at least $178,000.00 more than the Purchaser is currently offering for the Property in the Purchase Agreement, meaning that the excess proceeds would more than cover the Break-Up Fee. Thus, the Debtor respectfully submits that the Break-Up Fee is reasonable under the circumstances and should be approved.

### B.	Scheduling Auction, Approving the Form and Manner of Notice, and Scheduling a Final Hearing

22.	The Debtor also respectfully requests that the Court schedule the Auction, approve the notices associated with the Sale and Auction, and schedule the Final Hearing.

23. The Debtor thus requests that the court set (i) an Auction date of December 2, 2014 and (ii) a Final Hearing on December 4, 2014 (to approve the Sale of the Property to the Successful Bidder (as defined in the Bidding Procedures)).

24. No later than three days after entry of an initial order approving this Motion, the Debtor proposes to cause an *Auction and Sale Notice* (substantially in the form attached hereto as Exhibit C) (the "*Auction Notice*") to be sent by first-class mail, postage pre-paid, to all of the creditors listed in the Debtor's creditor matrix, all entities known to have expressed an interest in purchasing the Property (or that the Debtor, MPI, or RCI reasonably believe might have an interest in purchasing the Property), taxing authorities reasonably known to have an interest in the relief requested, the Office of the United States Trustee, and all parties who have requested notice of pleadings in the Debtor's bankruptcy case. The Debtor believes that the foregoing notice of the Auction and Bidding Procedures has the potential to drive up the price of the Property, and requests that such notice be deemed sufficient notice of the Auction and Bidding Procedures.

### C. The Property May be Sold Free and Clear Under Section 363(f) of the Bankruptcy Code, Provided that the Compromise Contemplated Herein is Approved

25. Section 363(f) of the Bankruptcy Code provides that a debtor in possession may sell property free and clear of any lien, claim, or interest in such property if, among other things, all holders of such interests consent to such sale. Here, RCI has agreed to consent to the Sale, provided that the compromise and settlement of the RCI Proof of Claim is approved, as is more fully set forth in the Procedures Order (the "*Settlement*"). The Settlement can be summarized as follows:

    a. If there is a closing of a Sale to a Successful Bidder (other than to RCI pursuant to a Credit Bid) under a Successful Bid (as the foregoing

    capitalized terms are defined in the Bidding Procedures) approved by a Sale Order, then RCI shall be paid in cash from the proceeds received at such closing, without further order of Court, the lesser of the following amounts (the resulting amount shall be referred to herein as the "*Payoff Amount*") (i) $4.5 million, and (ii) the net sale proceeds received from such Sale after deducting the commissions owed to brokers related to the Sale, customary adjustments and pro-rations relating to such Sale including without limitation unpaid real estate taxes, the Break-Up Fee, if applicable, and a Carve-Out (as hereafter defined), provided however, that in connection with the calculation of such net proceeds, the Debtor shall, prior to the closing, provide RCI with a closing statement detailing such calculation for RCI's consent, which consent shall not be unreasonably withheld, and provided further, in the event of any dispute concerning such calculation (A) the disputed portion of the net proceeds shall be held in escrow by a third-party escrow agent and the issue shall be promptly presented to the Bankruptcy Court for resolution by the Debtor's counsel, and (B) the undisputed portion of the Payoff Amount shall be paid to RCI at the closing. "*Carve-Out*" shall mean the amount, if any, as of the closing of such Sale, by which the unpaid and outstanding U.S. Trustee fees as allowable pursuant to 28 U.S.C. §1930, plus the unpaid and outstanding amount of the professional fees of the Debtor as allowable under section 327 of the Bankruptcy Code, exceeds the sum of the existing cash and collectible receivables of the Debtor (exclusive of any Sale proceeds), provided however, in no event shall the Carve-Out exceed the sum of $35,000.00;

    b.    if the Successful Bidder(s) (including any Back-Up Bidder(s)) fails to close a Sale approved by a Sale Order or if the Successful Bid (including any Back-Up Bid) is terminated, then RCI shall have the right, in its sole and absolute discretion, and upon three business days written notice to Debtor's counsel pursuant to the method provided in paragraph 4 of the Bidding Procedures (the "*Notice*"), to (i) take title to the property through the exercise of its right to Credit Bid, as defined in the Bidding Procedures, under section 363(k) of the Bankruptcy Code in an amount up to $4,500,000.00, and any order approving the Sale pursuant to a Credit Bid shall contain the protections set forth in sections 363(f)&(m) of the Bankruptcy Code; or (ii) foreclose upon and take title to, or otherwise transfer title to, the Property pursuant to either a deed in lieu of foreclosure, a consent foreclosure, or a state court foreclosure proceeding, under Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 et. seq.) (collectively, the "*Foreclosure Conveyance Alternative(s)*"). Should RCI elect to proceed under the Foreclosure Conveyance Alternatives, then (x) the automatic stay under section 362(a) of the Bankruptcy Code shall be deemed lifted, without the need for further act, deed, court order, or notice, as of the effective date of

        the Notice by RCI to the Debtor, to allow RCI to pursue its rights and remedies in connection with any of the Foreclosure Conveyance Alternatives, and (y) the Debtor shall be obligated to execute such documents and take such actions as are reasonably necessary to permit RCI to effectuate any of the Foreclosure Conveyance Alternatives;

c.    immediately upon the entry of the Procedures Order, the Debtor shall (i) execute and turnover to RCI the release and affirmation attached hereto as <u>Exhibit D</u> (the "*RCI Release*"), and (ii) cause the other Invsco Entities (as defined in the RCI Release) to execute and turnover the RCI Release to RCI;

d.    immediately upon the entry of the Procedures Order, RCI shall execute and turnover to the Debtor the release attached hereto as <u>Exhibit E</u> (the "*Debtor Release*"), provided however, the Debtor Release shall not be effective or enforceable unless and until one of the following two conditions is or has been fully and completely satisfied (the "*Release Effective Event"*): (i) the Payoff Amount shall have been paid to RCI as required herein, or (ii) title to the Property shall have been transferred pursuant to a Credit Bid or a Foreclosure Conveyance Alternative, and the Debtor shall have reasonably cooperated in connection therewith as required hereunder;

e.    the Procedures Order shall provide that the HBI Mortgage shall, without further act, notice, deed or court order, be deemed to be unconditionally, absolutely, irrevocably and forever released, discharged and terminated from the Property. In any event, if reasonably requested by a Successful Bidder or RCI, HBI is hereby directed to execute and deliver such documents and take such other action as may be reasonably necessary to release the HBI Mortgage from the Property; and

f.    upon the closing of the Sale approved by a Sale Order or the lifting of the automatic stay as provided above, the Debtor will request that the Chapter 11 Case be dismissed, with a prohibition against refiling, following payment of any fees due pursuant to 28 U.S.C. § 1930, and the Debtor's agreement to pay, at closing, any professional fees and any other chapter 11 administrative claims. If funds remain available, any non-insider prepetition claims shall be paid.

    The Debtor has agreed to RCI's requests and asks that this Court approve the terms of the Settlement.

4828-5989-0974, v. 7                 10

25. Pursuant to Bankruptcy Rule 9019(a), "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Settlements are favored in bankruptcy, particularly when they reduce administrative costs and expedite administration of the estate. S*ee Fogel v. Zell*, 221 F.3d 955, 960 (7th Cir. 2000). Such settlements should be approved by the Court if they are in the best interest of the Debtor's bankruptcy estate. *See In re Energy Coop., Inc.*, 886 F.2d 921, 927 (7th Cir. 1989); *In re Griffen Trading Co.*, 270 B.R. 883,903 (Bankr. N.D. Ill), *aff'd*, 270 B.R. 905 (N.D. Ill. 2001) (citing I*n re American Reserve Corp.*, 841 F.2d 159, 161 (7th Cir. 1987)).

26. In evaluating the proposed settlement, the Court should weigh the probable costs and benefits of litigation in the absence of settlement, considering "the litigation's probability of success, the litigation's complexity, and the litigation's attendant expense, inconvenience, and delay (including the possibility that disapproving the settlement will cause wasting of assets)." *Energy Coop., Inc.*, 886 F.2d at 927. In *Energy Cooperative, In*c., the Seventh Circuit instructed that:

> The court must determine whether the "value of the proposed compromised distribution is *reasonably* equivalent to the value of the potential claim which has been surrendered or modified by the settlement which has been achieved." The test for reasonable equivalence is "whether or not the terms of the proposed compromise fall within the reasonable range of litigation possibilities." A challenged settlement fails this test only if it "falls below the lowest point in the range of reasonableness."

*Id*. at 929 (citations omitted; emphasis in original).

27. In the present case, the Debtor has carefully considered the risks and potential costs and benefits associated with pursuing litigation over the RCI Proof of Claim. Given that the proposed compromise will reduce administrative expenses, substantially expedite the resolution of the Chapter 11 Case, and resolve the RCI Proof of Claim without litigation at a

material discount, the Debtor believes the Settlement is in the best interests of the Debtor's estate.

28. The Debtor also requests that the Court limit notice of this Motion and enter an order approving the Settlement along with the Procedures Order. This request can be entered on limited notice because all eight unsecured creditors and other parties in interest of the Debtor's estate will receive this Motion, the relief requested is in the best interests of all creditors and parties in interest junior in priority to RCI, and court approval of the Settlement will help to expedite the sales process and increase interest in the Property.

29. Further, the HBI Mortgage will be released pursuant to the Procedures Order, with HBI's cooperation and consent. Accordingly, since all parties holding secured claims against the Property have consented to the Sale, the Property may be sold free and clear of all liens, claims, or other interests.

### D. The Sale is Supported by the Debtor's Reasonable Business Judgment

30. This Court's power to authorize a sale under section 363(b) of the Bankruptcy Code is to be exercised at its discretion, utilizing a flexible, case by case approach. *In re Baldwin United Corp.*, 43 B.R. 905 (Bankr. S.D. Ohio 1984). The Court must find that a good business reason exists for the sale. *In re Schipper*, 933 F.2d 513 (7th Cir. 1991); *Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986). As noted in *In re Walter*, 83 B.R. 14, 19-20 (9th Cir. BAP 1988), citing *In re Lionel Corporation*, 722 F.2d 1063, 1070-71 (2d Cir. 1983):

> [T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business . . . Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in *Lionel*, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of

4828-5989-0974, v. 7                                12

> the Debtor, creditors and equity holders alike. He might, for example, look to such relevant factors as the proportionate value of the assets of the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plan of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

31. The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See, e.g., Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (In bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand."); *see also In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 793 (Bankr. N.D. Ill. 1985) (policy underlying the Code is to maximize "the value of the estate for the benefit of all creditors) (citations omitted).

32. Once a valid business justification is established, the business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was taken in the best interests of the company." *In re S.N.A. Nut Company*, 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995) (citing *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *Integrated Resources*, 147 B.R. at 656. Therefore, the relief requested in this Motion should be granted if the Debtor demonstrates a sound business justification for the request. *See Schipper*, 933 F.2d at 515; *In re Lionel Corp.*, 722 F.2d at 1071.

33. Here, in order to maximize value for the estate, the Debtor believes that it is crucial to sell the Property. MPI, the Debtor's broker, has contacted numerous parties that may have an interest in the Property, via phone calls and e-mail, and the agreement reflected in the

Purchase Agreement is the result of arms-length negotiations designed to achieve the highest possible price for the Property under the circumstances. The Debtor thus believes that the Sale proposed herein, including the proposed Auction and Bidding Procedures, will provide the maximum possible recovery to the Debtor's estate.

34. Further, the proposed Sale to the Purchaser is being made subject to higher and better offers. Therefore, if a third party is willing to pay significantly more for the Property the Bidding Procedures and Auction proposed herein should facilitate that transaction. Accordingly, the Debtor respectfully submits that the Sale-related relief proposed herein reflects a sound exercise of its business judgment and should be approved.

## Notice

35. The Debtor has provided notice of this Motion to the following parties: (a) the Office of the United States Trustee for the Northern District of Illinois; (b) the Debtor's secured creditor; and (c) all parties listed on the Debtor's schedules. In light of the circumstances of this Motion, the Debtor respectfully submits that no other or further notice need be provided.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order granting the Motion in its entirety and (a) (i) approve the Bidding Procedures for the Sale of the Property pursuant to section 363 of the Bankruptcy Code to the Purchaser subject to higher and better offers; (ii) schedule the Auction; (iii) approve the form and manner of notices associated with the Sale and Auction; (iv) schedule the Final Hearing to consider approval of the Sale of the Property; (iv) approve the compromise with RCI pursuant to Bankruptcy Rule 9019 and limiting the notice required; (b) approve the Sale to the Purchaser or the highest or best offer at the Auction; and (c) grant related relief.

Dated:  October 27, 2014                                    Respectfully submitted,

**800 SOUTH WELLS PHASE II, LLC**

By:     /s/ Harold D. Israel

GOLDSTEIN & MCCLINTOCK LLLP
Harley J. Goldstein, Esq.
Harold D. Israel, Esq.
208 South LaSalle Street, Suite 1750
Chicago, Illinois 60604
Telephone: (312) 337-7700
Facsimile: (312) 277-2305
e-mail: haroldi@goldmclaw.com

*Counsel for the Debtor and Debtor in Possession*