**EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| 800 SOUTH WELLS PHASE II, LLC, | ) Case No. 13-36880 (JPC) |
| Debtor. | ) |

## **BIDDING PROCEDURES**

Pursuant to the Order (A) Establishing Bidding Procedures in Connection With Sale of Certain Real Property of the Debtor, (B) Approving the Form And Manner Of Notices, (C) Setting a Final Hearing, (D) Approving the Compromise with River City Investors, LLC and Limiting Notice Thereof, and (E) Granting Related Relief, dated _____, 2014 [Docket No. ___] (the "*Procedures Order*"),[1] the following bidding procedures (the "*Bidding Procedures*") shall govern the sale (the "*Sale*") and competitive bidding process applicable to the sale of the Property (as defined below) of 800 South Wells Phase II, LLC, debtor and debtor-in-possession (the "*Debtor*"):

1.  Assets to be Sold. The Debtor is offering for sale, that certain real property (outdoor parking lot) located at 800 South Wells Street in Chicago, Illinois (the "*Property*"), as more specifically described in the Purchase Agreement (the "*Purchase Agreement*").

2.  Timing and Location of Auction. The Auction shall be conducted on **December 2, 2014** (the "*Auction Date*") at 10:00 a.m. The Auction will be held at the offices of Goldstein & McClintock LLLP, 208 South LaSalle Street, Suite 1750, Chicago, Illinois 60604. In the event of a change in time or place of the Auction, the Debtor shall use its reasonable best efforts to notify all Qualified Bidders (as defined below) who have timely submitted Qualified Bids (as defined below) on or before **November 26, 2014 at 4:00 p.m. CST**. (the "*Bid Deadline*;" provided, however, that the Bid Deadline can be extended by order of the Court or written agreement of the Debtor, CMK, and RCI (as defined herein)).

3.  Initial Bid. CMK Group, LLC ("*CMK*"), has submitted to the Debtor an initial stalking horse bid of $4,872,000 (the "*Initial Bid*"), which will serve as the minimum bid at the Auction, which Initial Bid is reflected in the executed purchase agreement attached hereto as Exhibit A.

4.  Required Submissions for Bidding. In order to participate in the bidding process, each person (each a "*Potential Bidder*") must deliver to the Debtor's counsel and RCI's counsel

---

[1] Capitalized terms not otherwise defined in these Bidding Procedures shall have the meanings ascribed to such terms in the Procedures Order.

(via overnight mail to Harold D. Israel, Goldstein & McClintock LLLP, 208 South LaSalle Street, Suite 1750, Chicago, IL 60604, and Henry B. Merens & Brad A. Berish, Adelman & Gettleman, Ltd., 53 W. Jackson Blvd., Suite 1050, Chicago, IL 60604, or via electronic mail to haroldi@goldmclaw.com, hmerens@ag-ltd.com, and bberish@ag-ltd.com) the following, on or before the Bid Deadline:

    (i)    an executed purchase agreement (a "*Purchase Agreement*") for the Property being bid upon substantially in the form attached hereto as Exhibit A;

    (ii)    a deposit of $243,600.00 (the "*Deposit*") in the form of a certified check, cash, or otherwise immediately available funds payable to the Debtor, to be submitted along with the bid;

    (iii)    an executed nondisclosure agreement in a form to be provided by counsel to the Debtor;

    (iv)    written evidence satisfactory to the Debtor of the Potential Bidder's chief executive officer or other appropriate senior executive's approval of the contemplated transaction;

    (v)    financial statements showing that the Potential Bidder has ample and present ability to close on the Property by the Closing Date (as defined below);

    (vi)    a signed statement acknowledging the prohibition against collusive bidding.

5.    Impact of Bid Submission. A "Bid" is a Purchase Agreement from a Potential Bidder stating that:

    (i)    the Potential Bidder offers to purchase the Property upon the same or better terms and conditions than those set forth in the Purchase Agreement, with the Potential Bidder's Purchase Agreement marked to show any and all amendments and modifications from the Purchase Agreement, including, but not limited to, purchase price and contact information of the purchaser;

    (ii)    the Potential Bidder is willing to purchase the Property for at least the Minimum Bid (as defined below);

    (iii)    the Potential Bidder is prepared to enter into and consummate the transaction by the Closing Date;

    (iv)    the Potential Bidder is not entitled to a break-up fee; and

    (v)    the offer is irrevocable until the Auction has taken place and the Potential Bidder is not approved as the Successful Bidder (as defined below) or

Back-up Bidder (as defined below); whether due to the Potential Bidder being not selected by the Debtor, the Potential Bidder not being approved by the Bankruptcy Court, or for any other reason whatsoever; in which case the Deposit will be refunded unless otherwise forfeited as a result of a breach.

6. <u>Deadline for Bid Submissions</u>. Bids shall be due on or before **November 26, 2014 at 4:00 p.m. CST.** If the Debtor does not receive any Qualified Bids other than the Initial Bid of CMK by the Bid Deadline, the Debtor will report the same to the Bankruptcy Court as the Successful Bid and CMK shall be deemed the Successful Bidder without holding the Auction.

7. <u>Determination of Qualified Bids</u>. For a Bid to be deemed a "Qualified Bid," it must comply with the requirements of and be accompanied by the additional information set forth in Paragraphs 4 & 5 above, as determined in the discretion of the Debtor in consultation with RCI (the Debtor, in consultation with RCI, also reserves the right to waive any and all such requirements and to deem a Bid to be a Qualified Bid in the absence of some or all such requirements, except that the amount of the Minimum Bid, as defined herein, may not be changed). A "Qualified Bidder" is a Potential Bidder that submits a Qualified Bid and, in the Debtor's reasonable discretion, in consultation with RCI, is determined to demonstrate the financial capability to consummate the purchase of the Property that is the subject of its Qualified Bid.

8. <u>Impact of Bid Rejection</u>. If the Debtor determines that a Potential Bidder is not a Qualified Bidder, the Debtor shall return the Deposit to the Potential Bidder promptly upon such determination. At the Auction, only Qualified Bidders who have submitted Qualified Bids for the Property shall be ensured of being able to bid on the Property.

9. <u>Credit Bidding</u>. Notwithstanding any other provisions of these Bidding Procedures, River City Investors, LLC ("*RCI*") shall have the right, but not the obligation, to credit bid under Section 363(k) of the Bankruptcy Code in an amount up to $4,500,000.00 of the RCI Proof of Claim, if necessary (collectively, the "*RCI Secured Claim*"), and if it so chooses to credit bid any part of the RCI Secured Claim to the Debtor's counsel on or before the Bid Deadline, it shall be deemed a Back-Up Bidder that will have submitted a Qualified Bid that shall be considered a Back-Up Bid hereunder (the "*Credit Bid*"), provided that (a) such Credit Bid shall not be otherwise subject to the other requirements of paragraphs 4 and 5 above, (b) such Credit Bid shall be considered a Back-Up Bid behind the Successful Bid and any other Back-Up Bid(s) selected by the Debtor under paragraph 12 below, and (c) if a Successful Bid (as defined below), other than RCI's Credit Bid, that is approved by the Final Sale Order (as defined below) fails to close within 30 days of the Closing Date hereunder, then: (i) such Credit Bid may close within 60 days after such Closing Date, or on such later date as may be agreed to by RCI (the "*Credit Bid Closing Date*"), and (ii) RCI may, in its sole and absolute discretion, send a written notice to Debtor's counsel (in the manner required by paragraph 4 above) before the Credit Bid Closing Date of its election to pursue the Foreclosure Conveyance Alternatives, in which event the Credit Bid shall be deemed withdrawn without further notice, deed, or act, and without the incurrence by RCI of any penalty or claim as a result of such withdrawal of the Credit Bid.

10. Minimum Bid and Bid Increments. The initial overbid (the "*Minimum Bid*") amount shall be $178,000.00 over the Initial Bid (i.e., $5,050,000.00). Following the Minimum Bid, the auction shall continue in bid increments of $25,000.00 or higher (the "*Minimum Bidding Increments*").

11. Procedures for the Auction. The Auction shall be conducted in accordance with commercially reasonable procedures to be established by counsel to the Debtor, in its discretion and in consultation with RCI, including, without limitation, relating to the Minimum Bidding Increments and other matters.

12. Determination of Successful Bid. Upon completion of the Auction, the Debtor, in its discretion and in consultation with RCI, shall select the Bid that will maximize the value of the Property and is in the best interest of the Debtor, its bankruptcy estate, and its creditors (the "*Successful Bid*"). The Debtor shall then submit the Successful Bid, along with any Back-Up Bid, for approval by the Bankruptcy Court at a final sale hearing/status hearing to be held on **December 4, 2014**, or as soon thereafter as reasonably practicable, and shall submit an order for entry by the Bankruptcy Court approving the sale free and clear of liens, claims, and encumbrances pursuant to, and containing the protections set forth in, sections 363(f) & (k) of the Bankruptcy Code (the "*Final Sale Order*"). The Deposit for the Qualified Bidder that submitted the Successful Bid shall be non-refundable until the conclusion of the Auction. If any party submitting a Successful Bid fails to close the sale, such party's Deposit shall be retained by the Debtor on account of damages suffered by them as a result of such failure to close, without prejudice to the Debtor's ability to seek additional damages from such party.

13. Right to Select Back-Up Bidder(s). At the conclusion of the Auction, the Debtor, in consultation with RCI, may designate a "Back-Up Bidder" or multiple Back-Up Bidders if necessary, provided that the Back-Up Bidder is willing to purchase the Property for at least the Minimum Bid. If, for any reason, the party that submits the Successful Bid fails to consummate the purchase of the Assets,

    (i) the Back-Up Bidder(s) shall be deemed to have submitted the highest and best bid, and shall be deemed the Successful Bid, and any party submitting such bid, the Successful Bidder; and

    (ii) the Debtor shall be authorized to effectuate the sale of the Property to the Back-Up Bidder(s) as soon as is commercially reasonable without further order of the Bankruptcy Court. The Back-Up Bidder(s)'s deposit shall be held in escrow until the closing of the transaction with the Successful Bidder.

14. Break-Up Fee. If CMK is not the Successful Bidder at the Auction and an alternate transaction is approved by the Court and consummated, CMK shall become entitled to a break-up fee in the amount of $146,160.00 (3% of the Initial Bid).

15. Acceptance of Bid/Sale Hearing. The Debtor's sale of the Property to the Successful Bidder shall be subject to the approval of the Successful Bid by the Bankruptcy Court (the "*Sale Hearing*"), which shall be conducted by the Bankruptcy Court on December 4, 2014 at

10:00 a.m. (Central Time) or at such earlier time as the Bankruptcy Court permits. The Debtor's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of such Qualified Bid. The Debtor will be deemed to have accepted a Qualified Bid only when the Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing.

16. <u>Closing of Sale</u>. Closing of the sale of the Property to the Successful Bidder shall occur no later than fifteen days following entry by the Court of the Final Sale Order (the "*Closing Date*"). The Closing Date may be extended by prior written agreement of the Debtor, RCI, and the Successful Bidder.