UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| 800 SOUTH WELLS PHASE II, LLC, | ) | Case No. 13-36880 (JPC) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**AGREED ORDER (A) ESTABLISHING BIDDING PROCEDURES IN
CONNECTION WITH SALE OF CERTAIN REAL PROPERTY OF THE
DEBTOR, (B) APPROVING THE FORM AND MANNER OF NOTICES, (C)
SETTING A FINAL HEARING, (D) APPROVING COMPROMISE WITH
RIVER CITY INVESTORS, LLC, AND (E) GRANTING RELATED RELIEF**

Upon the motion (the "*Motion*") of the above-captioned debtor and debtor in possession
(the "*Debtor*"), pursuant to sections 105 and 363 of title 11 of the United States Code (the
"*Bankruptcy Code*"), and rules 2002, 6004, 9007, 9014, and 9019 of the Federal Rules of
Bankruptcy Procedures (the "*Bankruptcy Rules*") for an Order, *inter alia*, (a) establishing
bidding procedures in connection with the sale (the "*Sale*") of that certain real property located at
800 South Wells Street, Chicago, Illinois (the "*Property*"), including certain bidding incentives
(the "*Bidding Procedures*"); (b) approving the form and manner of notices of the Sale; (c) setting
a hearing date to consider the approval of the Sale (the "*Final Hearing*"); (d) approving the
compromise between the Debtor and River City Investors, LLC ("*RCI*") pursuant to Bankruptcy
Rule 9019; and (e) granting related relief; and no other or further notice hereof being necessary
or required; capitalized terms used herein but not defined shall have the meaning ascribed to
them in the Motion; and it appearing to the Court that based upon the representations contained
in the Motion, the issuance of this Order is in the best interest of the Debtor, its estate, and its
creditors, and after due deliberation and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED as follows:

1.      That the Bidding Procedures, attached as <u>Exhibit 1</u> hereto, for conducting a sale by auction (the "*Auction*") of the Property are hereby authorized, approved, and made part of this Order as if fully set forth herein;

2.      That the Debtor is authorized and empowered to take such steps, expend such sums of money, and do such other things as may be necessary to implement and effect the terms and requirements established by this Order;

3.      That subject to the final determination of this Court, the Debtor is authorized to (a) determine, in its discretion, but in consultation with RCI, which of the Qualified Bids submitted for the Auction is the highest or otherwise best offer, and (b) properly reject any and all bids that, in the Debtor's discretion, in consultation with RCI, are (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, or the terms and conditions of the Sale; or (iii) contrary to the best interests of the Debtor, its estate and creditors;

4.      That the Break-up Fee and other bid protections as set forth in the Bidding Procedures are hereby approved and the Debtor is authorized and directed to pay any and all amounts owing to the Purchaser in accordance with the terms of the Bidding Procedures, including the Break-up Fee, without further order of the Court;

5.      That if the Purchaser becomes entitled to payment from the Debtor under the Bidding Procedures for the Break-up Fee, the Break-up Fee shall be paid upon consummation, and from the proceeds, of a transaction with a buyer other than the Purchaser;

6.      That the Auction Notice, in substantially the same form as annexed to the

Motion as <u>Exhibit C</u>, is sufficient to provide effective notice of the Bidding Procedures, the Auction, and the Sale to all interested parties, pursuant to Bankruptcy Rules 2002(a)(2) and 6004(a), and is hereby approved;

       7.     That if there is a closing of a Sale to a Successful Bidder (other than to RCI pursuant to a Credit Bid) under a Successful Bid (as the foregoing capitalized terms are defined in the Bidding Procedures) approved by a Sale Order, then RCI shall be paid in cash from the proceeds received at such closing, without further order of Court, the lesser of the following amounts (the resulting amount shall be referred to herein as the "*Payoff Amount*") (i) $4.5 million, and (ii) the net sale proceeds received from such Sale after deducting the commissions owed to brokers related to the Sale, customary adjustments and pro-rations relating to such Sale including, without limitation, real estate taxes, the Break-Up Fee, if applicable, and a Carve-Out (as hereafter defined), provided however, that in connection with the calculation of such net proceeds, the Debtor shall, prior to the closing, provide RCI with a closing statement detailing such calculation for RCI's consent, which consent shall not be unreasonably withheld, and provided further, in the event of any dispute concerning such calculation (A) the disputed portion of the net proceeds shall be held in escrow by a third-party escrow agent and the issue shall be promptly presented to the Bankruptcy Court for resolution by the Debtor's counsel, and (B) the undisputed portion of the Payoff Amount shall be paid to RCI at the Closing. "*Carve-Out*" shall mean the amount, if any, as of the closing of such Sale, by which the unpaid and outstanding U.S. Trustee fees as allowable pursuant to 28 U.S.C. §1930, plus the unpaid and outstanding amount of the professional fees of the Debtor as allowable under section 327 of the Bankruptcy Code, exceeds the sum of the existing cash and collectible receivables of the Debtor (exclusive of any Sale proceeds), provided however, in no event shall the Carve-Out exceed the

sum of $35,000.00;

       8.     That if the Successful Bidder(s) (including any Back-Up Bidder(s)) fails to close a Sale approved by a Sale Order or if the Successful Bid (including any Back-Up Bid) is terminated, then RCI shall have the right, in its sole and absolute discretion, and upon three business days written notice to Debtor's counsel pursuant to the method provided in paragraph 4 of the Bidding Procedures (the "*Notice*"),") (which notice shall also be filed with the Court by RCI), to (i) take title to the property through the exercise of its right to Credit Bid, as defined in the Bidding Procedures, under section 363(k) of the Bankruptcy Code in an amount up to $4,500,000.00, and any order approving the Sale pursuant to a Credit Bid shall contain the protections set forth in sections 363(f) & (m) of the Bankruptcy Code; or (ii) foreclose upon and take title to, or otherwise transfer title to, the Property pursuant to either a deed in lieu of foreclosure, a consent foreclosure, or a state court foreclosure proceeding, under Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 et. seq.) (collectively, the "*Foreclosure Conveyance Alternative(s)*"). Should RCI elect to proceed under the Foreclosure Conveyance Alternatives, then (x) the automatic stay under section 362(a) of the Bankruptcy Code shall be deemed lifted, without the need for further act, deed, court order, or notice, as of the effective date of the Notice by RCI to the Debtor, to allow RCI to pursue its rights and remedies in connection with any of the Foreclosure Conveyance Alternatives, and (y) the Debtor shall be obligated to execute such documents and take such actions as are reasonably necessary to permit RCI to effectuate any of the Foreclosure Conveyance Alternatives;

       9.     That immediately upon the entry of this Order, the Debtor shall (i) execute and turnover to RCI the release attached hereto as Exhibit 2 (the "*RCI Release*"), and (ii) shall cause the other Invsco Entities (as defined in the RCI Release) to execute and turnover the RCI

Release to RCI;

10.   That the Settlement between RCI and the Debtor is hereby approved in its entirety;

11.   That immediately upon the entry of this Order, RCI shall execute and turnover to the Debtor the release attached hereto as Exhibit 3 (the "*Debtor Release*"), provided however, the Debtor Release shall not be effective or enforceable unless and until one of the following two conditions is or has been fully and completely satisfied (the "*Release Effective Event*"): (i) the Payoff Amount shall have been paid to RCI as required herein, or (ii) title to the Property shall have been transferred pursuant to a Credit Bid or a Foreclosure Conveyance Alternative, and the Debtor shall have reasonably cooperated in connection therewith as required hereunder including, without limitation, as is required under paragraphs 8 and 9(ii) above;

12.   All interests of HBI including, without limitation, the HBI Mortgage, shall, without further act, notice, deed or court order, be deemed to be unconditionally, absolutely, irrevocably and forever released, discharged and terminated from the Property. In any event, if reasonably requested by a Successful Bidder or RCI, HBI is hereby directed to execute and deliver such documents and take such other action as may be reasonably necessary to release the HBI Mortgage from the Property;

13.   That upon either the closing of a Sale approved by a Sale Order or the lifting of the automatic stay as provided herein, the Debtor will request that the Chapter 11 Case be dismissed, with a prohibition against refiling for a period of no less than one (1) year from the date of such dismissal, following payment of any fees due pursuant to 28 U.S.C. § 1930, and the Debtor's agreement to pay, at closing, any professional fees and any other unpaid chapter 11 administrative claims. If funds remain available, any non-insider prepetition claims may be paid;

5

14.     That within three days of the entry of this Order, the Debtor shall serve the Auction Notice by first class mail, postage prepaid, or hand delivery upon: (a) all creditors, (b) all taxing authorities or recording offices which have a reasonably known interest in the relief requested, and (c) all federal, state, and local regulatory authorities with jurisdiction over the Debtor. Additionally, the Debtor will forward courtesy copies of the Auction Notice to all entities known to the Debtor who have expressed an interest in a transaction with respect to the Property during the last twelve months;

15.     That on **December 4, 2014 at 10:00 a.m. (Central Time)** or as soon thereafter as counsel may be heard, the Sale Hearing will be held before the Honorable Jacqueline P. Cox, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Northern District of Illinois, 219 South Dearborn Street, Courtroom 680, Chicago, Illinois, to consider the issuance and entry of an Order, *inter alia*, approving the Sale of the Property of the Debtor free and clear of liens, claims, and encumbrances; and

*[Remainder of Page Intentionally Left Blank]*

16.    That the Court shall retain jurisdiction with respect to all matters relating

to the interpretation or implementation of this Order.

Dated: _____, 2014

**NOV - 5 2014**

*Jacqueline P. Cox*

J. Cox

_____
UNITED STATES BANKRUPTCY JUDGE

THE ABOVE IS FULLY UNDERSTOOD, ACKNOWLEDGED, APPROVED AND AGREED TO AS OF THIS 27th DAY OF OCTOBER, 2014:

**800 SOUTH WELLS PHASE II, LLC**

By:    /s/    Harold D. Israel_____
Harley J. Goldstein, Esq.
Harold D. Israel, Esq.
**GOLDSTEIN & MCCLINTOCK LLLP**
208 South LaSalle Street, Suite 1750
Chicago, Illinois 60604
*Counsel for the Debtor*

**RIVER CITY INVESTORS, LLC**

By:    /s/    Brad A. Berish_____
Henry B. Merens
Brad A. Berish
**ADELMAN & GETTLEMAN LTD.**
53 W. Jackson Blvd., Suite 1050
Chicago, Illinois 60604
*Counsel for River City Investors, LLC*

# EXHIBIT 1

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| 800 SOUTH WELLS PHASE II, LLC, | ) | Case No. 13-36880 (JPC) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## BIDDING PROCEDURES

Pursuant to the Order (A) Establishing Bidding Procedures in Connection With Sale of Certain Real Property of the Debtor, (B) Approving the Form And Manner Of Notices, (C) Setting a Final Hearing, (D) Approving the Compromise with River City Investors, LLC and Limiting Notice Thereof, and (E) Granting Related Relief, dated _____, 2014 [Docket No. ___] (the "*Procedures Order*"),[1] the following bidding procedures (the "*Bidding Procedures*") shall govern the sale (the "*Sale*") and competitive bidding process applicable to the sale of the Property (as defined below) of 800 South Wells Phase II, LLC, debtor and debtor-in-possession (the "*Debtor*"):

1.    Assets to be Sold.  The Debtor is offering for sale, that certain real property (outdoor parking lot) located at 800 South Wells Street in Chicago, Illinois (the "*Property*"), as more specifically described in the Purchase Agreement (the "*Purchase Agreement*").

2.    Timing and Location of Auction.  The Auction shall be conducted on **December 2, 2014** (the "*Auction Date*") at 10:00 a.m.  The Auction will be held at the offices of Goldstein & McClintock LLLP, 208 South LaSalle Street, Suite 1750, Chicago, Illinois 60604.  In the event of a change in time or place of the Auction, the Debtor shall use its reasonable best efforts to notify all Qualified Bidders (as defined below) who have timely submitted Qualified Bids (as defined below) on or before **November 26, 2014 at 4:00 p.m. CST.** (the "*Bid Deadline*;" provided, however, that the Bid Deadline can be extended by order of the Court or written agreement of the Debtor, CMK, and RCI (as defined herein)).

3.    Initial Bid.  CMK Group, LLC ("*CMK*"), has submitted to the Debtor an initial stalking horse bid of $4,872,000 (the "*Initial Bid*"), which will serve as the minimum bid at the Auction, which Initial Bid is reflected in the executed purchase agreement attached hereto as Exhibit A.

4.    Required Submissions for Bidding.  In order to participate in the bidding process, each person (each a "*Potential Bidder*") must deliver to the Debtor's counsel and RCI's counsel

---

[1]    Capitalized terms not otherwise defined in these Bidding Procedures shall have the meanings ascribed to such terms in the Procedures Order.

(via overnight mail to Harold D. Israel, Goldstein & McClintock LLLP, 208 South LaSalle Street, Suite 1750, Chicago, IL 60604, and Henry B. Merens & Brad A. Berish, Adelman & Gettleman, Ltd., 53 W. Jackson Blvd., Suite 1050, Chicago, IL 60604, or via electronic mail to haroldi@goldmclaw.com, hmerens@ag-ltd.com, and bberish@ag-ltd.com) the following, on or before the Bid Deadline:

    (i)      an executed purchase agreement (a "*Purchase Agreement*") for the Property being bid upon substantially in the form attached hereto as Exhibit A;

    (ii)     a deposit of $243,600.00 (the "*Deposit*") in the form of a certified check, cash, or otherwise immediately available funds payable to the Debtor, to be submitted along with the bid;

    (iii)    an executed nondisclosure agreement in a form to be provided by counsel to the Debtor;

    (iv)    written evidence satisfactory to the Debtor of the Potential Bidder's chief executive officer or other appropriate senior executive's approval of the contemplated transaction;

    (v)     financial statements showing that the Potential Bidder has ample and present ability to close on the Property by the Closing Date (as defined below);

    (vi)    a signed statement acknowledging the prohibition against collusive bidding.

    5.     Impact of Bid Submission. A "Bid" is a Purchase Agreement from a Potential Bidder stating that:

    (i)      the Potential Bidder offers to purchase the Property upon the same or better terms and conditions than those set forth in the Purchase Agreement, with the Potential Bidder's Purchase Agreement marked to show any and all amendments and modifications from the Purchase Agreement, including, but not limited to, purchase price and contact information of the purchaser;

    (ii)     the Potential Bidder is willing to purchase the Property for at least the Minimum Bid (as defined below);

    (iii)    the Potential Bidder is prepared to enter into and consummate the transaction by the Closing Date;

    (iv)    the Potential Bidder is not entitled to a break-up fee; and

    (v)     the offer is irrevocable until the Auction has taken place and the Potential Bidder is not approved as the Successful Bidder (as defined below) or

Back-up Bidder (as defined below); whether due to the Potential Bidder being not selected by the Debtor, the Potential Bidder not being approved by the Bankruptcy Court, or for any other reason whatsoever; in which case the Deposit will be refunded unless otherwise forfeited as a result of a breach.

6.     Deadline for Bid Submissions.  Bids shall be due on or before **November 26, 2014 at 4:00 p.m. CST.**  If the Debtor does not receive any Qualified Bids other than the Initial Bid of CMK by the Bid Deadline, the Debtor will report the same to the Bankruptcy Court as the Successful Bid and CMK shall be deemed the Successful Bidder without holding the Auction.

7.     Determination of Qualified Bids.  For a Bid to be deemed a "Qualified Bid," it must comply with the requirements of and be accompanied by the additional information set forth in Paragraphs 4 & 5 above, as determined in the discretion of the Debtor in consultation with RCI (the Debtor, in consultation with RCI, also reserves the right to waive any and all such requirements and to deem a Bid to be a Qualified Bid in the absence of some or all such requirements, except that the amount of the Minimum Bid, as defined herein, may not be changed).  A "Qualified Bidder" is a Potential Bidder that submits a Qualified Bid and, in the Debtor's reasonable discretion, in consultation with RCI, is determined to demonstrate the financial capability to consummate the purchase of the Property that is the subject of its Qualified Bid.

8.     Impact of Bid Rejection.  If the Debtor determines that a Potential Bidder is not a Qualified Bidder, the Debtor shall return the Deposit to the Potential Bidder promptly upon such determination.  At the Auction, only Qualified Bidders who have submitted Qualified Bids for the Property shall be ensured of being able to bid on the Property.

9.     Credit Bidding.    Notwithstanding any other provisions of these Bidding Procedures, River City Investors, LLC ("*RCI*") shall have the right, but not the obligation, to credit bid under Section 363(k) of the Bankruptcy Code in an amount up to $4,500,000.00 of the RCI Proof of Claim, if necessary (collectively, the "*RCI Secured Claim*"), and if it so chooses to credit bid any part of the RCI Secured Claim to the Debtor's counsel on or before the Bid Deadline, it shall be deemed a Back-Up Bidder that will have submitted a Qualified Bid that shall be considered a Back-Up Bid hereunder (the "*Credit Bid*"), provided that (a) such Credit Bid shall not be otherwise subject to the other requirements of paragraphs 4 and 5 above, (b) such Credit Bid shall be considered a Back-Up Bid behind the Successful Bid and any other Back-Up Bid(s) selected by the Debtor under paragraph 12 below, and (c) if a Successful Bid (as defined below), other than RCI's Credit Bid, that is approved by the Final Sale Order (as defined below) fails to close within 30 days of the Closing Date hereunder, then: (i) such Credit Bid may close within 60 days after such Closing Date, or on such later date as may be agreed to by RCI (the "*Credit Bid Closing Date*"), and (ii) RCI may, in its sole and absolute discretion, send a written notice to Debtor's counsel (in the manner required by paragraph 4 above) before the Credit Bid Closing Date of its election to pursue the Foreclosure Conveyance Alternatives, in which event the Credit Bid shall be deemed withdrawn without further notice, deed, or act, and without the incurrence by RCI of any penalty or claim as a result of such withdrawal of the Credit Bid.

10.     Minimum Bid and Bid Increments.  The initial overbid (the "*Minimum Bid*")
amount shall be $178,000.00 over the Initial Bid (i.e., $5,050,000.00).  Following the Minimum
Bid, the auction shall continue in bid increments of $25,000.00 or higher (the "*Minimum Bidding
Increments*").

11.     Procedures for the Auction.  The Auction shall be conducted in accordance with
commercially reasonable procedures to be established by counsel to the Debtor, in its discretion
and in consultation with RCI, including, without limitation, relating to the Minimum Bidding
Increments and other matters.

12.     Determination of Successful Bid.  Upon completion of the Auction, the Debtor, in
its discretion and in consultation with RCI, shall select the Bid that will maximize the value of
the Property and is in the best interest of the Debtor, its bankruptcy estate, and its creditors (the
"*Successful Bid*").  The Debtor shall then submit the Successful Bid, along with any Back-Up
Bid, for approval by the Bankruptcy Court at a final sale hearing/status hearing to be held on
**December 4, 2014**, or as soon thereafter as reasonably practicable, and shall submit an order for
entry by the Bankruptcy Court approving the sale free and clear of liens, claims, and
encumbrances pursuant to, and containing the protections set forth in, sections 363(f) & (k) of
the Bankruptcy Code (the "*Final Sale Order*").  The Deposit for the Qualified Bidder that
submitted the Successful Bid shall be non-refundable until the conclusion of the Auction.  If any
party submitting a Successful Bid fails to close the sale, such party's Deposit shall be retained by
the Debtor on account of damages suffered by them as a result of such failure to close, without
prejudice to the Debtor's ability to seek additional damages from such party.

13.     Right to Select Back-Up Bidder(s).  At the conclusion of the Auction, the Debtor,
in consultation with RCI, may designate a "Back-Up Bidder" or multiple Back-Up Bidders if
necessary, provided that the Back-Up Bidder is willing to purchase the Property for at least the
Minimum Bid.  If, for any reason, the party that submits the Successful Bid fails to consummate
the purchase of the Assets,

> (i)     the Back-Up Bidder(s) shall be deemed to have submitted the highest and
> best bid, and shall be deemed the Successful Bid, and any party submitting
> such bid, the Successful Bidder; and

> (ii)    the Debtor shall be authorized to effectuate the sale of the Property to the
> Back-Up Bidder(s) as soon as is commercially reasonable without further
> order of the Bankruptcy Court.  The Back-Up Bidder(s)'s deposit shall be
> held in escrow until the closing of the transaction with the Successful
> Bidder.

14.     Break-Up Fee.  If CMK is not the Successful Bidder at the Auction and an
alternate transaction is approved by the Court and consummated, CMK shall become entitled to a
break-up fee in the amount of $146,160.00 (3% of the Initial Bid).

15.     Acceptance of Bid/Sale Hearing.  The Debtor's sale of the Property to the
Successful Bidder shall be subject to the approval of the Successful Bid by the Bankruptcy Court
(the "*Sale Hearing*"), which shall be conducted by the Bankruptcy Court on December 4, 2014 at

10:00 a.m. (Central Time) or at such earlier time as the Bankruptcy Court permits. The Debtor's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of such Qualified Bid. The Debtor will be deemed to have accepted a Qualified Bid only when the Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing.

16.    Closing of Sale. Closing of the sale of the Property to the Successful Bidder shall occur no later than fifteen days following entry by the Court of the Final Sale Order (the "*Closing Date*"). The Closing Date may be extended by prior written agreement of the Debtor, RCI, and the Successful Bidder.

# EXHIBIT 2

## RELEASE AND AFFIRMATION

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and pursuant to the terms and conditions of that certain Agreed Order (A) Establishing Bidding Procedures In Connection With Sale Of Certain Real Property Of The Debtor, (B) Approving The Form and Manner of Notices, (C) Setting A Final Hearing, (D) Approving Compromise With River City Investors, LLC, and (E) Granting Related Relief (the "**Agreed Order**"), executed by 800 South Wells Phase II, LLC ("**Debtor**") and River City Investors, LLC ("**RCI**"), and entered on _____, 2014, by the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, in the Chapter 11 bankruptcy case of the Debtor known as case no. 13-36880; the undersigned Debtor, 800 South Wells Phase I, LLC ("**Phase I**"); River City Holdings, LLC ("**RCH**"); River City Residences, LLC ("**RCR**"); River City Marina, LLC ("**RCM**"); AIGL Development Company ("**AIGL**"); The Acquest Group, LLC ("**Acquest**"), Home by Invsco, Inc. ("**Home**"), Nicholas S. Gouletas ("**NSG**") and Natel Matschulat Gouletas ("**NMG**", and collectively with the Debtor, Phase I, RCH, RCR, RCM, AIGL, Acquest, Home, NSG and NMG, the "**Invsco Entities**") agree as follows:

1.      Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Agreed Order.

2.      Each of the Invsco Entities, for itself and on behalf of each of its respective employees, officers, directors, agents, servants, attorneys, trustees, members, managers, heirs, successors, and assigns, and any other party acting or purporting to act on its behalf (hereinafter, collectively and individually, the "**Invsco Parties**"), do hereby unconditionally, unequivocally, and irrevocably remise, release and forever discharge RCI, RC Mortgage Holdings, LLC ("**RC Mortgage**"), and each of their respective employees, officers, directors, agents, servants, attorneys, trustees, members, managers, heirs, successors, and assigns (collectively and individually, the "**Lender Parties**"), from all claims, debts, demands, actions, causes of action, suits, accounts, promises, doings, omissions, covenants, contracts, agreements, warranties, bonds, bills, specialties, controversies, variances, trespasses, judgments, executions, expenses, costs and liabilities whatsoever, known and unknown, of every name and nature, in law and in equity, which the Invsco Parties now have, or may have, or which the Invsco Parties ever had, from the beginning of the world through this date against the Lender Parties (the "**Claims**") that arise out of, relate to, or are in connection with (the Claims arising out of, relating to, or in connection with the following shall be referred to herein as the "**Invsco Claims**") (i) that certain promissory note (the "**RCI Note**") dated March 22, 2001 executed by each of Phase I, the Debtor, RCH, RCR, and RCM (the "**Obligors**") in favor of RCI in the original principal amount of $2,000,000, any other document executed in connection with the RCI Note including, the RCI Settlement Documents (as defined in the Motion) and each of those documents attached to the RCI Proof of Claim (as defined in the Motion, and collectively, with the RCI Note and the RCI Settlement Documents, the "**RCI Loan Documents**"), (ii) the Property, (iii) the Debtor, and/or (iv) chapter 5 of title 11 of the United States Code; provided however, nothing contained herein shall be deemed or construed to be a release, waiver or discharge of, or impair, limit or modify the terms and conditions of the Agreed Order. The RCI Settlement Documents are deemed void as of the date of execution of this release.

1

3. Each of the undersigned understand and agree that the foregoing release is to resolve any and all disputes that they may assert with respect to the Invsco Claims and that no such party will receive any further consideration for such release, and agree not to assert or prosecute any further claims or lawsuits against any party included within Lender Parties, whether specifically named or identified, with respect to any matter covered by Section 2 above. Any and all claims intended to be released as provided above against any party included within the term Lender Parties, and not specifically named or identified, are hereby assigned in full to such party hereby intended to be released.

4. In the event that a Foreclosure Conveyance Alternative is selected by RCI pursuant to the terms of the Agreed Order, and solely for purposes of such Foreclosure Conveyance Alternative proceeding, each of the Invsco Entities hereby covenants, represents, and warrants to RCI, with the intent and understanding that RCI is expressly relying thereon as a material inducement to enter into the Agreed Order and that without the inclusion of this Section 4, RCI would not have entered into the Agreed Order:

      a. The amount reflected in the RCI Proof of Claim (the "**Indebtedness**") is in default and immediately due and payable in full without further demand;

      b. The terms of the RCI Loan Documents including, but not limited to, the Obligors' respective obligations and liabilities under the RCI Loan Documents and the validity and priority of the liens and security interests created thereby, are hereby affirmed and ratified, and it is acknowledged and agreed that the same are in full force and effect and are unconditionally binding and enforceable against the Obligors, and each of them, as the case may be, in accordance with their respective terms;

      c. None of the Invsco Entities possess any claims, defenses, offsets, recoupments or counterclaims of any kind or nature against the enforcement or validity of the RCI Loan Documents, or any of the obligations set forth therein, including, but not limited to, the immediate collection of the Indebtedness and the foreclosure of the Property pursuant to the Foreclosure Conveyance Alternative (collectively, the "**Claims**"), nor do any of the Invsco Entities now have knowledge of any facts that would give rise to any Claims affecting, modifying or limiting the enforceability of same. In the event there now exists facts that would give rise to any Claims against or with respect to the enforcement of the RCI Loan Documents, and/or the Indebtedness, the Invsco Entities, and each of them, do hereby unconditionally, irrevocably and unequivocally waive and fully release any and all such Claims to the same extent as if such Claims were the subject of a lawsuit, adjudicated to a conclusion in favor of the RCI and dismissed therein with prejudice;

      d. RCI has a first priority and superior security interest, which is validly perfected against the Property;

EXECUTION COPY

e.  The Obligors are unconditionally liable for all of the Indebtedness under the applicable Loan Documents and do hereby ratify and affirm all of such Indebtedness;

f.  Each of the Invsco Entities has full power and organizational authority to enter into, execute, deliver and perform this Release and Affirmation and to consummate the transactions contemplated herein; all necessary governance action has been taken in order to authorize the execution hereof by each of said parties and the consummation of the transactions contemplated herein; and upon execution and delivery, this Agreement will be a valid, binding and enforceable obligation of each of said parties. Each of the Invsco Entities, with the advice of counsel, has of its own free will and volition, knowingly and voluntarily assented to become a party to this Release and Affirmation. This Release and Affirmation have been, and will be duly executed and delivered by duly authorized representatives of each of said party; and

g.  The Invsco Entities have not assigned, transferred or otherwise conveyed to any person or entity any of the rights, title, Claims, Invsco Claims, or interests being transferred, released and/or settled by any of them herein or otherwise being dealt with in this Release and Affirmation.

5.      This Release and Affirmation may be executed in any number of counterparts, each of which shall be deemed an original, and all of which, together, shall constitute one and the same instrument. An electronically or facsimiled transmitted signature shall be treated as an original for all purposes.

6.      This Release and Affirmation shall be governed by and construed in accordance with the internal laws (as opposed to the conflicts of law provisions) of the State of Illinois.

[Remainder of Page Intentionally Left Blank; Signature Page Follows]

IN WITNESS WHEREOF, the undersigned have executed this Release and Affirmation as of the ___ day of _____, 2014.

**INVSCO ENTITES:**

**800 SOUTH WELLS PHASE II, LLC,**

_____

By: Nicholas S. Gouletas
Its: Sole Member

**THE ACQUEST GROUP, LLC,**

_____

By: Nicholas S. Gouletas
Its: Manager

**RIVER CITY HOLDINGS, LLC**

_____

By: _____

Its: _____

**RIVER CITY RESIDENCES, LLC**

_____

By: _____

Its: _____

**800 SOUTH WELLS PHASE I, LLC**

_____

By: _____

Its: _____

**RIVER CITY MARINA, LLC**

_____

By: _____

Its: _____

**AIGL DEVELOPMENT COMPANY**

_____

By: _____

Its: _____

**HOME BY INVSCO, INC.**

_____

By: _____

Its: _____

**NICHOLAS S. GOULETAS**

_____

**NATEL MATSCHULAT GOULETAS**

_____

4

# EXHIBIT 3

## RELEASE

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and pursuant to the terms and conditions of that certain Agreed Order (A) Establishing Bidding Procedures In Connection With Sale Of Certain Real Property Of The Debtor, (B) Approving The Form and Manner of Notices, (C) Setting A Final Hearing, (D) Approving Compromise With River City Investors, LLC, and (E) Granting Related Relief (the "**Agreed Order**"), executed by 800 South Wells Phase II, LLC ("**Debtor**") and River City Investors, LLC ("**RCI**"), and entered on _____, 2014, by the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, in the Chapter 11 bankruptcy case of the Debtor known as case no. 13-36880; the undersigned, RCI and RC Mortgage Holdings, LLC ("**RC Mortgage**"), agrees as follows:

1.       Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Agreed Order.

2.       Each of RCI and RC Mortgage for itself and on behalf of its respective employees, officers, directors, agents, servants, attorneys, trustees, members, managers, heirs, successors, and assigns, and any other party acting or purporting to act on its behalf (hereinafter, collectively and individually, the "**Lender Parties**"), do hereby unconditionally, unequivocally, and irrevocably remise, release and forever discharge the Debtor, 800 South Wells Phase I, LLC ("**Phase I**"); River City Holdings, LLC ("**RCH**"); River City Residences, LLC ("**RCR**"); River City Marina, LLC ("**RCM**"); AIGL Development Company ("**AIGL**"); The Acquest Group, LLC ("**Acquest**"); Home by Invsco, Inc. ("**Home**"); Nicholas S. Gouletas ("**NSG**"); and Natel Matschulat Gouletas ("**NMG**", and collectively with the Debtor, Phase I, RCH, RCR, RCM, AIGL, Acquest, Home, NSG and NMG, the "**Invsco Entities**") and each of their respective employees, officers, directors, agents, servants, attorneys, trustees, members, managers, heirs, successors, and assigns (collectively and individually, "**Invsco Parties**"), from all claims, debts, demands, actions, causes of action, suits, accounts, promises, doings, omissions, covenants, contracts, agreements, warranties, bonds, bills, specialties, controversies, variances, trespasses, judgments, executions, expenses, costs and liabilities whatsoever, known and unknown, of every name and nature, in law and in equity, which the Lender Parties now have, or may have, or which the Lender Parties ever had, from the beginning of the world through this date against the Invsco Parties (the "**Claims**") that arise out of, relate to, or are in connection with (the Claims arising out of, relating to, or in connection with the following shall be referred to herein as the the "**Lender Claims**") (i) that certain promissory note (the "**RCI Note**") dated March 22, 2001 executed by each of Phase I, the Debtor, RCH, RCR, and RCM (the "**Obligors**") in favor of RCI in the original principal amount of $2,000,000, and any other document executed in connection with the RCI Note including, the RCI Settlement Documents (as defined in the Motion) and each of those documents attached to the RCI Proof of Claim (as defined in the Motion, and collectively, with the RCI Note and the RCI Settlement Documents, the "**RCI Loan Documents**"), (ii) the Debtor, and/or (iii) the Property; provided however, nothing contained herein shall be deemed or construed to be a release, waiver or discharge of, or impair, limit or modify the terms and conditions of the Agreed Order. The RCI Settlement Documents are deemed void as of the date of execution of this release.

1

3.      Each of the undersigned understand and agree that the foregoing release is to resolve any and all disputes that they may have with respect to the Lender Claims and that no such party will receive any further consideration for such release except as set forth in the Agreed Order, and agree not to assert or prosecute any further claims or lawsuits against any party included within Invsco Parties, whether specifically named or identified, with respect to any matter covered by Section 2 above. Any and all claims intended to be released as provided above against any party included within the term Invsco Parties, and not specifically named or identified, are hereby assigned in full to such party hereby intended to be released.

4.      Notwithstanding any other provision herein, this Release shall not be effective or enforceable unless and until the Release Effective Event has occurred.

5.      This Release may be executed in any number of counterparts, each of which shall be deemed an original, and all of which, together, shall constitute one and the same instrument. An electronically or facsimiled transmitted signature shall be treated as an original for all purposes.

6.      This Release shall be governed by and construed in accordance with the internal laws (as opposed to the conflicts of law provisions) of the State of Illinois.

[Remainder of Page Intentionally Left Blank; Signature Page Follows]

2

IN WITNESS WHEREOF, the undersigned have executed this Release as of the ___ day
of _____, 2014.

**RIVER CITY INVESTORS, LLC**

_____

By: _____

Its: _____

**RIVER CITY MORTGAGE HOLDINGS, LLC**

_____

By: _____

Its: _____