## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| 800 SOUTH WELLS PHASE II, LLC, | ) | Case No. 13-36880 (JPC) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## ORDER (A) APPROVING THE SALE TO THE PURCHASER OR
## THE HIGHEST OR BEST OFFER AT AUCTION, FREE AND CLEAR
## OF LIENS, CLAIMS, LIABILITIES, AND ENCUMBRANCES
## AND (B) GRANTING RELATED RELIEF

Upon the motion (the "*Sale Motion*")[1] of the above-captioned debtor and debtor in

possession (the "*Debtor*" or "*Seller*"), pursuant to sections 363, 1107(a), and 1108 of title 11 of

the Bankruptcy Code and Rules 2002, 6004, 9007, 9014, and 9019 of the Federal Rules of

Bankruptcy Procedure (the "*Bankruptcy Rules*"), and any other applicable Bankruptcy Rules, for

an order (the "*Order*"), *inter alia*, (a) approving the Sale to CMK Group, LLC, or its designee

("*CMK*") or the highest or best offer at the Auction; and (b) granting related relief; and due

notice of the Sale Motion and Final Hearing having been provided, and it appearing that no other

or further notice need be provided; and the Court having considered the Sale Motion, the notice

of Sale Motion, the Declaration of Daniel J. Hyman submitted in support of the Sale Motion

[Docket No. 47], and all other documents, papers, and exhibits filed in connection therewith and

support thereof, including the Agreement, a copy of which, as amended by that certain First

Amendment to Purchase Agreement is attached hereto as Exhibit 1 and Exhibit 2, respectively

---

[1]    References to the Sale Motion refer to that certain Motion for Entry of an Order (A)(I) Approving
Procedures for the Sale of Debtor's Real Property Free and Clear of all liens, Claims, Encumbrances, and Other
Interests; (II) Scheduling an Auction; (III) Approving Form and Manner of Notices Associated With the Auction;
(IV) Setting a Final Sale Hearing; (V) Approving Compromise With River City Investors, LLC and Limiting Notice;
(B) Approving the Sale to the Purchaser or the Highest or Best Offer at Auction; and (C) Granting Related Relief
[Docket No. 38].

(as amended, the *"Purchase Agreement"*); the Court being informed that in accordance with the Bidding Procedures the Debtor (a) determined that CMK, CH Acquisitions 2, LLC or its designee (*"Crescent"*), and River City Investors, LLC, or its assignee or nominee (*"RCI Entity"*) were "Qualified Bidders" and (b) conducted an auction (the *"Auction"*) with CMK, Crescent, and RCI Entity on December 2, 2014 for the Sale; and the Debtor further having informed the Court that in its business judgment the Debtor determined that CMK (the *"Purchaser"*) as the Successful Bidder, having made the highest and best bid at the Auction in the amount of $7,750,000, and it appearing that the Court has jurisdiction over this matter; and the Court finding that the relief requested in the Sale Motion with respect to the Sale constitutes an exercise of the Debtor's sound business judgment and is in the best interests of the Debtor, its estate, and its creditors; and after due deliberation and consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED:**

### General

A.      Unless otherwise indicated herein, all capitalized terms not otherwise defined in this Order have the meanings ascribed to such terms in the Sale Motion, the Purchase Agreement, the Bidding Procedures, or the Bidding Procedures Order (as defined herein) as applicable; provided, however, that in the event of an inconsistency between the definitions set forth in the Sale Motion, the Bidding Procedures Order, the Bidding Procedures, or the Purchase Agreement, the meanings ascribed to such terms in the Purchase Agreement shall apply.

B.      On November 5, 2014, the Court entered that certain *Agreed Order (A) Establishing Bidding Procedures In Connection With Sale of Certain Real Property of the Debtor, (B) Approving The Form And Manner Of Notices, (C) Setting A Final Hearing, (D)*

*Approving Compromise with River City Investors, LLC, and (E) Granting Related Relief* (the "*Bidding Procedures Order*") [Docket No. 43], pursuant to which the Court, *inter alia*, authorized the Debtor to conduct the Auction and approved the bidding procedures contained in the Sale Motion and annexed to the Bidding Procedures Order as Exhibit 1.

      C.      As evidenced by the certificates of service filed with the Court, and based on the representations of counsel at the Final Hearing, (i) proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, and the Final Hearing was provided in accordance with sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014, and all other applicable Bankruptcy Rules and provisions of the Bankruptcy Code, and the Bidding Procedures Order, including timely and adequate service of the Auction Notice; (ii) such notice was good and sufficient and appropriate under the particular circumstances; and (iii) no other or further notice of the Sale Motion, the transactions contemplated therein, the Bidding Procedures Order, the Final Hearing, and/or the entry of this Order is required.

**The Sale Process for the Property**

      D.      The Debtor has demonstrated a sufficient basis and the existence of exigent circumstances requiring it to conduct the transactions contemplated by the Purchase Agreement (the "*Sale Transaction*"), including the sale of the Property, and such actions are appropriate exercises of the Debtor's business judgment and in the best interests of the Debtor, its estate and its creditors.

      E.      The Debtor and the Purchaser have complied with the Bidding Procedures Order and the Bidding Procedures in all respects.

F.      Pursuant to the Bidding Procedures, as approved by the Court, the Purchaser submitted the highest and best offer for the Property on the terms and conditions set forth in the Purchase Agreement.

G.      The Bidding Procedures afforded a full, fair, and reasonable opportunity for any entity to make a higher or better offer to purchase the Property and no higher or better offer was timely made.

### The Sale of the Property to the Purchaser

H.      The Debtor has agreed to the Purchase Agreement, this Order and the transactions contemplated thereby and hereby. The Sale Transaction is not being entered into fraudulently. The Debtor has advanced sound business reasons for seeking authority to enter into the Purchase Agreement, to sell the Property, as more fully set forth in the Sale Motion and as demonstrated at the Final Hearing, and it is a reasonable exercise of the Debtor's business judgment to sell the Property and to execute the Purchase Agreement with the Purchaser.

I.      The Debtor has the right to convey, good, clear, marketable title to the Property, is the sole lawful owner, lessee or licensee of, the Property, and pursuant to this Order has the full right to sell, transfer, convey, assign and deliver the Property to the Purchaser free and clear of all liens, claims, liabilities, and encumbrances, including, without limitation, all claims of RCI, MPI or any other broker, except Permitted Exceptions (as defined in the Purchase Agreement).

J.      Each and every provision of section 363 of the Bankruptcy Code has been complied with and is applicable to the sale of the Property.

K.      The Purchaser is a good faith purchaser in accordance with section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The Purchase Agreement was negotiated and proposed, and has been entered into by the parties, in

good faith within the meaning of section 363(m) of the Bankruptcy Code, at arm's length bargaining positions, and without collusion. The Purchaser did not engage in any collusion in placing its bid to purchase the Property. Absent a stay of the effectiveness of this Order, if any, the Debtor and the Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the Sale Transaction, at any time after the entry of this Order.

L.      The Sale Transaction will, upon the Closing, (i) be a legal, valid, and effective transfer of the Property to the Purchaser with no further action required on the part of the Debtor or its respective affiliates, and (ii) vest the Purchaser with good title to the Property free and clear of all liens, claims, liabilities, and encumbrances, except Permitted Exceptions expressly permitted by the Purchase Agreement, within the meaning of section 363 of the Bankruptcy Code.

M.      The relief sought in the Sale Motion, including approval of the Purchase Agreement and consummation of the Sale Transaction, is in the best interests of the Debtor, its estate, its creditors, and all parties in interest. The terms and conditions of the Purchase Agreement, including the total consideration to be realized by the Debtor pursuant to the Purchase Agreement, are fair and reasonable and the Sale Transaction is in the best interest of the Debtor, its estate, its creditors, and all parties in interest.

N.      Except as otherwise provided in the Purchase Agreement, consummation of the Sale Transaction will not subject the Purchaser to any debts, liabilities, obligations, commitments, responsibilities, or claims of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, of or against the Debtor or any other person by reason of such transfers and assignments, including, without limitation, liabilities based on any theory of antitrust, de facto merger, substantial

continuity, successor or transferee liability; environmental liabilities or obligations or liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Property prior to the Closing of the Sale Transaction.

O.      The Purchaser is not a mere continuation or successor of the Debtor, there is no substantial continuity between the Purchaser and the Debtor, and there is no continuity of enterprise between the Purchaser and the Debtor. The Purchaser is not holding itself out to the public as a continuation of the Debtor. The Purchaser is not an "insider" or otherwise an "affiliate" of the Debtor (as such terms are defined in section 101 of the Bankruptcy Code).

## ACCORDINGLY, THE COURT HEREBY ORDERS THAT:

### General Provisions

1.      The Sale Motion is GRANTED.

2.      All parties in interest have had the opportunity to object to the relief requested in the Sale Motion and to the extent that objections to the Sale Motion or the relief requested therein have not been withdrawn, waived, or settled, such objections and all reservations of right included therein, are overruled on the merits. The parties who did not object, or who withdrew their objections, to the Sale Motion, are deemed to have consented to the relief sought therein, including, without limitation, consummation of the Sale Transaction, pursuant to section 363(f)(2) of the Bankruptcy Code.

### Approval of the Purchase Agreement

3.      The Purchase Agreement, the terms and conditions thereof, and each of the transactions contemplated thereby, are approved in their entirety and are binding upon the parties thereto. Upon entry of this Order, the covenants contained in the Purchase Agreement, to the extent (if any) not already enforceable by their terms, shall be fully enforceable by the parties to

the Purchase Agreement in accordance with and subject to the terms and conditions of the
Purchase Agreement. The offer of the Purchaser, upon the terms and conditions set forth in the
Purchase Agreement, including the form and total consideration to be realized by the Debtor
pursuant to the Purchase Agreement, is the highest and best offer received by the Debtor for the
Property.

4.      The Debtor has the right to convey, good, clear, marketable title to the Property, is
the sole lawful owner of the Property, and pursuant to this Order has the full right to sell,
transfer, convey, assign, and deliver the Property to the Purchaser free and clear of all liens,
claims, liabilities, and encumbrances, except Permitted Exceptions.

### Transfer of the Property to the Purchaser

5.      Pursuant to sections 105(a) and 363 of the Bankruptcy Code, upon the Closing,
the Property shall be sold, transferred or otherwise conveyed to Purchaser free and clear of all
liens, claims, liabilities, and encumbrances (including, without limitation, all claims of RCI,
MPI, or any other broker), except Permitted Exceptions.

6.      Pursuant to Sections 105 and 363 of the Bankruptcy Code, the Debtor is
authorized and directed to perform its obligations under and to comply with the terms of the
Purchase Agreement and to consummate the Sale Transaction, pursuant to and in accordance
with the terms and conditions of the Purchase Agreement and this Order.

7.      This Order and the Purchase Agreement approved hereby shall be binding in all
respects upon the Purchaser, the Debtor, and its estate, all creditors (whether known or unknown)
of the Debtor, all interested parties, and their successors and assigns, including, but not limited
to, any party asserting a lien, claim, liability, or encumbrance with respect to the Debtor's
business or relating to the Property.

8.      This Order (a) shall be effective as a determination that, as of the Closing, except as set forth in the Purchase Agreement, (i) no liens, claims, liabilities, and encumbrances relating to the Property will be assertable against the Purchaser, its affiliates, successors or assigns or any of their respective assets (including the Property), whether or not due and payable as of the Closing, (ii) the Property shall have been transferred to the Purchaser free and clear of all liens, claims, liabilities, and encumbrances, and (iii) the conveyances described herein have been effected; and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title; and each of the foregoing persons and entities is hereby directed to accept for filing, registration or recordation any and all of the documents and instruments (including Certified copies of this Order) necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

## Back-Up Bidders

9.      In the event that Purchaser fails to close as required by the Purchase Agreement, Crescent (the "*Initial Back-Up Bidder*") shall constitute, without further order of this Court, the Purchaser for all purposes of this Order; provided that the Debtor shall file a notice with the Court identifying Initial Back-Up Bidder and attach a clean and amended Purchase Agreement thereto that represents the highest Qualified Bid ($7.5 million) made by the Initial Back-Up

Bidder at the Auction, which shall then constitute the Purchase Agreement for all purposes of this Order.

10.    In the event that Initial Back-Up Bidder fails to close under its Purchase Agreement, as provided in the Bidding Procedures Order, at its option, RCI Entity shall constitute, without further order of this Court, the Purchaser for all purposes of this Order, with all of the terms of this Order to remain the same and to be binding upon, and inure to the benefit of, the RCI Entity; provided that the Debtor shall file a notice with the Court identifying RCI Entity as the Purchaser and attach a clean and amended Purchase Agreement thereto that represents the Qualified Bid made by the RCI Entity at the Auction, which shall then constitute the Purchase Agreement for all purposes of this Order; it being understood that such bid shall constitute a "credit bid" under section 363(k) of the Bankruptcy Code.

## Payments to RCI. MPI, CMK, and Other Bidders

11.    As set forth in paragraph 7 of the Bidding Procedures Order, RCI shall be paid the undisputed portion of the Payoff Amount at Closing.

12.    MPI (and any other broker entitled to compensation), under that certain Exclusive Right to Sell or Lease Agreement dated July 21, 2014, as approved by the Court in its order granting Debtor's Application to Employ MOI as Real Estate Broker [Docket No. 21], shall be paid at Closing in connection with and pursuant to the Purchase Agreement, provided, however, in the event that the RCI Entity is the Purchaser, MPI and any other broker shall not be entitled to any fee or other compensation in this Chapter 11 Case or otherwise in connection with a Closing of the RCI Entity Purchase Agreement.

**Miscellaneous Provisions**

13.      The consideration provided by the Purchaser for the Property constitutes reasonably equivalent value and fair consideration (as those terms may be defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof, or the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.

14.      The transactions contemplated by the Purchase Agreement are undertaken by the Purchaser in good faith and at arms' length, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction, unless such authorization and such Sale Transaction are stayed pending such appeal by issuance of a stay prior to Closing.

15.      The Purchaser, as a purchaser in good faith within the meaning of section 363(m) of the Bankruptcy Code, shall be entitled to the protections of section 363(m) of the Bankruptcy Code in the event this Order or any authorization contained herein is reversed or modified on appeal.

16.      The Sale Transaction may not be avoided under section 365(n) of the Bankruptcy Code.

17.      The terms and provisions of the Purchase Agreement and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor and its estate, its creditors, the Purchaser, and any successor and assign, including, without limitation, any trustee that may be appointed in the Chapter 11 Case or any subsequent chapter 7 proceeding, and any

affected third parties, and all other persons asserting liens, claims, liabilities, and encumbrances against and in the Property to be sold to the Purchaser pursuant to the Purchase Agreement. The failure specifically to include any particular provisions of the Purchase Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court, the Debtor and the Purchaser that the Purchase Agreement and any related agreements are authorized and approved herein in their entirety with such amendments thereto as may be made by the parties consistent with this Order prior to the Closing.

18.     Except as specifically set forth in the Purchase Agreement, the Purchase Agreement may be further modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that (a) any such modification, amendment, or supplement does not materially change the terms of the Purchase Agreement or modify the express terms of this Sale Order, and (b) the Debtor shall give prior written notice of any such amendment to counsel for the RCI Entity.

19.     Each and every federal, state, and local governmental agency, department, or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

20.     The Court shall retain jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder (and of each of the agreements executed in connection therewith in all respects), to adjudicate disputes related to this Order or the Purchase Agreement.

21.     Notwithstanding Rules 6004(h) and 6006(d), this Order shall be effective immediately upon entry and the Debtor is authorized to close the transactions contemplated by the Purchase Agreement immediately upon entry of this Order, subject to the terms of the Purchase Agreement.

22.     To the extent any conflicts exist with this Order and the Purchase Agreement, the terms of this Order shall govern and control; provided, however, that the rights and obligations of Purchaser under its bid, as reflected in the Purchase Agreement, shall not be altered without the consent of Purchaser.

Dated: _____Dec. 4_____, 2014

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

## PURCHASE AGREEMENT

THIS **PURCHASE AGREEMENT** ("**Agreement**") is made as of date of execution and delivery of a copy of this Agreement by the last of Buyer and Seller to do so ("**Effective Date**") by and between **CMK GROUP, LLC**, an Illinois limited liability company, or its assignee or nominee ("**Buyer**") and **800 SOUTH WELLS PHASE II, LLC**, an Illinois limited liability company ("**Seller**").

Subject to the terms and conditions of this Agreement, Seller agrees to sell and Buyer agrees to buy that certain parcel of real property legally described on <u>Exhibit A</u> attached hereto and hereby made a part hereof, together with all hereditaments and appurtenances pertaining to such tract and all improvements located thereon, including without limitation all of Seller's right, title, and interest in and to adjacent streets, alleys, and rights-of-way, and any riparian rights appurtenant thereto (collectively the "**Property**").

1.    **PURCHASE PRICE/POSSESSION**. The purchase price of the Property (the "**Purchase Price**") shall be **Four Million Eight Hundred Seventy Two Thousand and 00/100 Dollars ($4,872,000.00),** plus or minus prorations as herein provided. The Purchase Price shall be payable in cash or certified or cashier's check or by wire transfer on the Closing Date (as herein defined), at which time Seller shall deliver exclusive possession of the Property to Buyer. The purchase of the Property is subject to all of the conditions contained hereinbelow.

2.    **EARNEST MONEY**. Within three (3) business days following the Effective Date, Buyer shall deposit a sum equal to **five percent (5%)** of the Purchase Price ("**Earnest Money**") in a joint order escrow account with Near North National Title LLC ("**Title Company**"), under the Title Company's customary form of strict joint order escrow instructions.

3.    **ESCROW CLOSING**. The consummation of the transaction described in this Agreement ("**Closing**") shall occur by means of an escrow with the Title Company in accordance with the general provisions of the usual forms of deed and money escrow agreement then in use by the Title Company, with such special provisions inserted in the escrow agreement as may be required to conform to this Agreement. Upon the creation of such escrow, anything herein to the contrary notwithstanding, payment of the Purchase Price and delivery of the deed shall be made through the escrow and any and all sums paid to Seller by Buyer prior to Closing shall be deposited in the escrow or credited against the Purchase Price payable at Closing. The cost of the escrow shall be divided equally between Seller and Buyer.

4.    **CLOSING DATE**. Provided that Buyer has not terminated this Agreement pursuant to a right to do so contained herein, and provided that all other covenants and conditions herein contained on the part of Seller have been complied with, the closing of the transaction which is the subject of this Agreement (the "**Closing**") shall occur **fifteen (15) days** following the entry of an order of the Bankruptcy Court having jurisdiction over Seller and the Property approving this Agreement (the "**Closing Date**").

5.    **DOCUMENTS TO BE DELIVERED BY SELLER**. Within ten (10) business days from the Effective Date, Seller shall deliver to Buyer copies of the following to the extent in Seller's possession or under its control (collectively, the **"Property Information"**):

(a)    A current title commitment for the Property issued by the Title Company with copies of all recorded documents (collectively, the **"Title Documents"**);

(b)    A plat of survey for the Property showing the boundaries and location of all existing improvements on the Property as well as all easements, confirming the legal description;

(c)    Any engineering and environmental reports in Seller's possession;

(d)    Copies of current tax bills and documents relating to tax or assessment proceedings, abatements, exemptions, or notices;

(e)    Copies of any written notices from the City of Chicago, County of Cook, the State of Illinois or any governmental entity of code violations; and

(f)    Any other documents reasonably requested by Buyer or known by Seller to materially affect said Property.

Except as otherwise expressly provided herein, Seller makes no representation or warranties as to the accuracy or completeness of any of the Property Information.

6.    **BUYER ACCESS TO PROPERTY**. From and after the Effective Date, Buyer shall have the right to enter onto the Property to conduct and make such studies as Buyer deems reasonably necessary, at Buyer's sole expense, including but not limited to engineering studies, soil analysis, core drilling, zoning studies, mechanical studies, tunnel studies, sewer studies, environmental and ecological studies, economic studies, any and all other physical inspections of the Property (collectively, the **"Due Diligence Materials"**). Seller shall cooperate with Buyer in making such inspections and allow Buyer full access to the Property for the purpose of such inspections. Buyer shall notify Seller in advance of making any such inspections. Buyer shall indemnify Seller against any property damage or personal injury arising from any such inspections. Prior to entering the Property for the purposes of conducting any such tests or inspections, Buyer shall provide Seller with evidence of general liability insurance naming Seller as an additional insured and reasonably acceptable to Seller.

7.    **BUYER'S RELIANCE ON ITS INVESTIGATIONS**. **TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW AND EXCEPT FOR SELLER'S REPRESENTATIONS AND WARRANTIES IN PARAGRAPH 8 OF THIS AGREEMENT AND ANY WARRANTIES OF TITLE CONTAINED IN THE DEED DELIVERED AT THE CLOSING ("SELLER'S WARRANTIES"), THIS SALE IS MADE AND WILL BE MADE WITHOUT REPRESENTATION, COVENANT, OR WARRANTY OF ANY KIND (WHETHER EXPRESS, IMPLIED, OR, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, STATUTORY) BY SELLER.   AS A MATERIAL PART OF THE CONSIDERATION FOR THIS**

AGREEMENT, BUYER AGREES TO ACCEPT THE PROPERTY ON AN "AS IS" AND "WHERE IS" BASIS, WITH ALL FAULTS, AND WITHOUT ANY REPRESENTATION OR WARRANTY, ALL OF WHICH SELLER HEREBY DISCLAIMS, EXCEPT FOR SELLER'S WARRANTIES. EXCEPT FOR SELLER'S WARRANTIES, NO WARRANTY OR REPRESENTATION IS MADE BY SELLER AS TO FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY, DESIGN, QUALITY, CONDITION, OPERATION OR INCOME, COMPLIANCE WITH DRAWINGS OR SPECIFICATIONS, ABSENCE OF DEFECTS, ABSENCE OF HAZARDOUS OR TOXIC SUBSTANCES, ABSENCE OF FAULTS, FLOODING, OR COMPLIANCE WITH LAWS AND REGULATIONS INCLUDING, WITHOUT LIMITATION, THOSE RELATING TO HEALTH, SAFETY, AND THE ENVIRONMENT. BUYER ACKNOWLEDGES THAT BUYER HAS ENTERED INTO THIS AGREEMENT WITH THE INTENTION OF MAKING AND RELYING UPON ITS OWN INVESTIGATION OF THE PHYSICAL, ENVIRONMENTAL, ECONOMIC USE, COMPLIANCE, AND LEGAL CONDITION OF THE PROPERTY AND THAT BUYER IS NOT NOW RELYING, AND WILL NOT LATER RELY, UPON ANY REPRESENTATIONS AND WARRANTIES MADE BY SELLER OR ANYONE ACTING OR CLAIMING TO ACT, BY, THROUGH OR UNDER OR ON SELLER'S BEHALF CONCERNING THE PROPERTY, EXCEPT FOR SELLER'S WARRANTIES. THE PROVISIONS OF THIS PARAGRAPH 7 SHALL SURVIVE INDEFINITELY ANY CLOSING OR TERMINATION OF THIS AGREEMENT AND SHALL NOT BE MERGED INTO THE CLOSING DOCUMENTS.

8.    **REPRESENTATIONS, WARRANTIES AND COVENANTS.**    Seller represents, warrants and covenants to Buyer that, to Seller's knowledge, as of the Effective Date hereof and the Closing Date:

(a)    Except for (i) that certain Management Agreement (the "**Management Agreement**"), dated as of the 1st day of January, 2002, by and between Seller as Owner and Standard Parking Corporation, an Illinois corporation, as Operator, (ii) that certain Easement Agreement for Retaining Wall to be entered into by and among Seller, River City Private Residences Condominium Association, an Illinois not-for-profit corporation, WRT-Marc RC, LLC, an Illinois limited liability company, and River City Marina Facilities, L.L.C., an Illinois limited liability company, subject to Buyer's reasonable approval, and recorded following Court Approval (as such term is hereinafter defined), and/or (iii) as disclosed in any of the Title Documents, there are no written leases, service contracts, maintenance agreements, management agreements or other operating agreements affecting all or any portion of the Property and there are no written agreements or commitments between Seller and any occupant or user of the Property affecting all or any portion of the Property.

(b)    There are no outstanding options to purchase or options to lease or any rights of first refusal or rights of first offer for all or any portion of the Property.

(c)     Except as otherwise disclosed to Buyer in writing, Seller is not a party to any written agreement with any person, firm, corporation or other entity that has any right or option to acquire the Property or any portion thereof.

(d)     There is not pending, nor has Seller received a written threat from a public authority, of a contemplated condemnation of the Property or any part thereof.

(e)     Seller's execution of and performance under this Agreement does not constitute a breach of any written agreement, order, judgment or decree to which Seller is a party or by which any part of the Property is or may be bound.

(f)     Seller will not transfer the Property except as herein expressly contemplated, nor except as otherwise disclosed to Buyer in writing, hereafter create any easements, liens, mortgages, or other encumbrances with respect to the Property, except with Buyer's prior written consent. Seller shall maintain the Property in as good condition and repair as exists on the Effective Date.

(g)     Seller has not received any written notice from any governmental entity that the environmental and ecological condition of the Property is in violation in any material respect of any law, ordinance, rule or regulation applicable thereto.

The continued validity in all material respects of all representations, covenants and warranties set forth in this Agreement shall be a condition precedent to the performance of Buyer's obligations hereunder.

"Seller's knowledge," as used in this Agreement means the current actual knowledge of Nicholas Gouletas, without any duty of inquiry or investigation.

In the event of a material breach of any representation or warranty by Seller known to Buyer before Closing, Buyer may, at Buyer's election, (i) terminate this Agreement and receive a refund of the Earnest Money; or (ii) proceed with the Closing, in which case Seller shall have no liability for such breach.

9.     **CONDITIONS PRECEDENT**.  This Agreement and Buyer's obligation to close are subject to the following additional express conditions precedent set forth below:

(a)     the continued validity of each and all of the representations, warranties and covenants of Seller contained in this Agreement in all material respects; and

(b)     the delivery of the documents required to be delivered by Seller at Closing as described in this Agreement.

Notwithstanding anything to the contrary which may be contained herein, each of the conditions precedent may be waived in writing by Buyer, such conditions being intended for the exclusive protection and benefit of Buyer. If any of the conditions precedent to Buyer's obligations set forth in this Paragraph 9 or elsewhere in the Agreement are not fulfilled at or within the times set forth herein for the fulfillment thereof (after any applicable cure period), or not otherwise waived in writing by Buyer, Buyer may terminate this Agreement by notice to Seller, in which event the Earnest Money, and any accrued interest thereon, shall be refunded to Buyer and this Agreement shall thereupon become null and void and of no further force and effect:

10.    **PRORATIONS.** *Ad valorem* real estate taxes for the year of Closing (and, if applicable, the year prior thereto) shall be prorated at Closing effective as of the Closing Date. If Closing occurs before the tax rate is fixed for the year of Closing and/or the year prior thereto, the apportionment of taxes for the year prior to Closing and/or the apportionment of taxes for the year of Closing will be based upon an estimated tax equal to one hundred ten percent (110%) of the most recently ascertainable assessed valuation, tax rate and state equalization factor. All prorations shall be final. All special taxes or assessments through the Closing Date shall also be paid by Seller. Seller shall pay the taxes imposed by State of Illinois and Cook County law on the transfer of title and Seller and Buyer shall each pay the portion of the tax imposed by City of Chicago imposed on each party by the ordinance establishing same (*i.e.* Seller shall pay $3.00 per $1,000 of the Purchase Price and Buyer shall pay $7.50 per $1,000 of the Purchase Price). Seller and Buyer shall execute completed Real Estate Transfer Declarations in the forms required by the State of Illinois, the County of Cook and the City of Chicago, and Seller shall satisfy any other requirements imposed by the State of Illinois, the County of Cook and the City of Chicago with respect to such transfer taxes.

11.    **DEED/CLOSING MECHANICS.** At Closing, Seller shall deliver to Buyer the following items, which items shall be in form and substance satisfactory to Buyer:

(a)    an Owner's ALTA Policy of Title Insurance Form B, issued by the Title Company in Buyer's favor in the full amount of the Purchase Price, insuring Buyer's fee simple title to the Property in the form required under Paragraph 3, with extended coverage,;

(b)    a Special Warranty Deed (the "**Deed**"), in form suitable for recording, conveying good and marketable fee simple title to the Property to Buyer, free and clear of all liens and encumbrances subject only to the exceptions set forth on Exhibit B attached hereto and hereby made a part hereof and such additional Title Documents as may be approved by Buyer prior to Closing, which such approval shall not be unreasonably withheld, conditioned or delayed (the "**Permitted Exceptions**");

(c)    exclusive possession of the Property;

(d)    such executed documents as are necessary or appropriate to allow Buyer to comply with Section 1445 of the Internal Revenue Code regarding tax withholding on the sale of U.S. real property by a foreign person or such executed certificates or affidavits as are appropriate regarding exemption from such requirements; and

(e)      such other executed documents or instruments as in the reasonable opinion of counsel for Buyer or the Title Company may be necessary or desirable to effectuate Closing.

12.      **DEED/CLOSING MECHANICS - BUYER**.  On or prior to the Closing Date, or as otherwise provided, Buyer shall do or perform the following:

(a)      cause to be delivered to Seller the Earnest Money and the balance of the Purchase Price; and

(b)      execute and deliver such other documents or instruments as in the reasonable opinion of counsel for Seller or the Title Company may be necessary or desirable to effectuate Closing.

13.      **DEFAULT**.

(a)      If Seller is unable to convey title to the Property in accordance with the condition in this Agreement, if there has occurred a material breach of any of Seller's representations, warranties, and/or covenants, or if the conditions precedent to Buyer's performance specified herein have neither been satisfied nor waived by Buyer, or if Seller fails to consummate this Agreement for any reason (other than Buyer's default, or a termination of this Agreement by Buyer pursuant to a right to do so expressly provided for in this Agreement or the failure to obtain Court Approval, as such term is hereinafter defined, notwithstanding diligent good-faith efforts by Seller to obtain Court Approval), Buyer may, at Buyer's sole option, (a) terminate this Agreement by written notice to Seller and receive  a refund of the Earnest Money; or (b) seek to enforce this Agreement by an action for specific performance, as Buyer's sole and exclusive remedy, which such action must be brought within ninety (90) days of Seller's default, to the extent permitted by applicable law, Buyer waiving the right to bring suit for specific performance at any later date.  Notwithstanding the foregoing or any other provision contained herein to the contrary, it is hereby acknowledged and agreed that the failure to obtain Court Approval (as such term is hereinafter defined) of this Agreement and the transaction contemplated hereby for whatever reason (other than Seller' failure to utilize diligent good-faith efforts to obtain Court Approval) shall not be deemed a default by Seller hereunder and shall entitle Buyer to refund of the Earnest Money as its sole recourse.

(b)      If Buyer fails to consummate this Agreement for any reason (other than Seller's default or a termination of this Agreement by Seller or Buyer pursuant to a right to do so expressly provided for in this Agreement), Seller may, as Seller's sole and exclusive remedy, and in lieu of any other remedy, legal or equitable in nature, retain the Earnest Money as and for liquidated damages and not as a penalty, the parties hereto acknowledging and agreeing that actual damages resulting from any such default would be difficult if not impossible to calculate and that the amount of the Earnest Money reasonably approximates the amount of such damages.

(c)    Notwithstanding the provisions above, no default by either party hereto shall result in a termination or limitation of any rights of such party hereunder unless and until the other party shall have notified the defaulting party in writing of said default.

14.    **REAL ESTATE COMMISSION**. Buyer and Seller represent and warrant to each other that neither Buyer nor Seller has dealt with any broker in connection with, and that no broker was the procuring cause of the transaction contemplated by this Agreement, other than Millennium Properties and Dirk Riekse/Cushman & Wakefield (collectively "**Broker**"). Seller shall pay all commissions due and owing Broker in connection with the execution and/or consummation of this Agreement. The commissions due and owing Broker shall not exceed five percent (5%) of the Purchase Price in the aggregate and shall be shared by Millennium Properties and Dirk Riekse/Cushman & Wakefield in such proportion as such brokers may agree. Seller agrees to protect, defend, indemnify and hold harmless Buyer, Buyer's successors and assigns, from and against any and all obligation, cost, expense and liability, including without limitation, all reasonable attorney's fees and court costs, arising out of any claim for brokerage commission, finder's commission or other such compensation by any party as a result of the dealings of Seller in connection with this Agreement. Buyer agrees to protect, defend, indemnify and hold harmless Seller, Seller's successors and assigns, from and against any and all obligation, cost, expense and liability, including without limitation, all reasonable attorney's fees and court costs, arising out of any claim for brokerage commission, finder's commission or other such compensation by any party (other than Broker) as a result of the dealings of Buyer in connection with this Agreement.

15.    **MISCELLANEOUS PROVISIONS**.

(a)    **Assignment**. Buyer may assign Buyer's rights in this Agreement to any entity partially or wholly owned or controlled by Colin M. Kihnke, without Seller's prior written consent, but no such assignment shall be effective against Seller until a copy of a written assignment agreement between Buyer and its assignee which includes an express assumption of all Buyer obligations hereunder by Buyer's assignee is delivered to Seller. Except as set forth hereinabove, Buyer may not assign Buyer's rights in this Agreement without Seller's prior written consent.

(b)    **Notices**. All notices required or desired to be given hereunder shall be deemed given if and when delivered personally, or on the next business day after being deposited with a national overnight courier service, or on the next business day after being deposited in the United States certified or registered mail, return receipt requested, postage prepaid, or upon receipt of a facsimile transmission with a confirmation delivered by regular mail, addressed to the party at its address set forth below, or to such other address as the party to receive such notice may have designated to all other parties by notice in accordance herewith:

If to Buyer:        225 West Ohio Street
                    Chicago, Illinois 60654
                    Attention: Colin M. Kihnke
                    FAX: (312) 376-2056

| With a copy to: | Schain, Banks, Kenny & Schwartz, Ltd. |
| | 70 West Madison Street |
| | Suite 5300 |
| | Chicago, Illinois 60602 |
| | Attention: David J. O'Keefe, Esq. |
| | FAX: (312) 345-5701 |
| | |
| If to Seller: | 182 West Lake Street |
| | Suite 200 |
| | Chicago, Illinois 60601 |
| | Attention: Nicholas Gouletas |
| | FAX: (312) _____ |
| | |
| With a copy to: | Millennium Properties R/E |
| | 200 West Madison Street |
| | 36th Floor |
| | Chicago, Illinois 60606 |
| | Attention: Daniel J. Hyman |
| | FAX: (312) 264-0540 |
| | |
| With a copy to: | Goldstein & McClintock LLLP |
| | 208 South LaSalle Street |
| | Suite 1750 |
| | Chicago, Illinois 60604 |
| | Attention: Harold D. Israel, Esq. |
| | FAX: (312) 277-2310 |
| | |
| With a copy to: | DLA Piper LLP (US) |
| | 203 North LaSalle Street |
| | Suite 1900 |
| | Chicago, Illinois 60601 |
| | Attention: Elizabeth H. Friedgut, Esq. |
| | FAX: (312) 630-5341 |

(c)   **Entire Agreement**. This Agreement constitutes the entire agreement between Seller and Buyer, and there are no other covenants, agreements, promises, terms, provisions, conditions, undertakings, or understandings, either oral or written, between them concerning the Property other than those herein set forth. No subsequent alteration, amendment, change, deletion or addition to this Agreement shall be binding upon Seller or Buyer unless in writing and signed by both Seller and Buyer.

(d)   **Headings**. The headings, captions, numbering system, etc., are inserted only as a matter of convenience and may under no circumstances be considered in interpreting the provisions of the Agreement.

(e)     **Binding Effect**. All of the provisions of this Agreement are hereby made binding upon the personal representatives, heirs, successors, and assigns of both parties hereto.

(f)     **Time of Essence**. Time is of the essence of this Agreement.

(g)     **Unenforceable or Inapplicable Provisions**. If any provision hereof is for any reason unenforceable or inapplicable, the other provisions hereof will remain in full force and effect in the same manner as if such unenforceable or inapplicable provision had never been contained herein.

(h)     **Counterparts**. This Agreement may be executed in any number of counterparts, each of which will for all purposes be deemed to be an original, and all of which are identical.

(i)     **Applicable Law, Place of Performance**. This Agreement shall be construed under and in accordance with the laws of the State of Illinois. All obligations contained in this Agreement are to be performed in Cook County, State of Illinois.

(j)     **Buyer's Waiver of Conditions Precedent**. Buyer may, at Buyer's sole option, waive any of the conditions precedent to Buyer's performance specified in this Agreement by giving written notice to Seller at any time on or before the Closing Date.

(k)     **Survival Clause**. Unless otherwise expressly stated in this Agreement, each of the covenants, obligations, representations, and agreements contained in this Agreement shall survive the Closing and the execution and delivery of the Deed required hereunder only for a period of twelve (12) months immediately following the Closing Date. Any claim brought after Closing based upon a material misrepresentation or a material breach of a warranty contained in Paragraph 8 of this Agreement or material breach of any of the other covenants, obligations or agreements contained herein shall be actionable or enforceable, subject to the notice and cure provisions set forth in Paragraph 13 hereof, if and only if written notice of any such claim is given within six (6) months after Closing to the party which allegedly made any such material misrepresentation or breached in any material respect any such covenant, obligation, warranty or agreement.

(l)     **No Third Party Beneficiary**. This Agreement is not intended to give or confer any benefits, rights, privileges, claims, actions, or remedies to any person or entity as a third party beneficiary, decree, or otherwise.

(m)     **Closing Date**. In the event that the Closing Date or any other deadline date described in this Agreement falls on a weekend or a holiday, the Closing Date or other deadline date shall be deemed to be the next business day.

(n)   **Execution by Seller.** The person(s) executing this Agreement on behalf of Seller hereby represent and warrant (i) that such persons are duly authorized to do so and subject to Court Approval (as such term is hereinafter defined), have all necessary legal authority to and by such execution do hereby, bind Seller to the terms hereof; and (ii) hereby indemnify Buyer from and against any loss or damage resulting from any inaccuracy in the foregoing representation.

(o)   **Attorneys' Fees and Costs.** In the event legal action is instituted to interpret or enforce the provisions of this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party the prevailing party's costs and attorney's fees, including, without limitation, all costs and fees that are incurred in any trial, on any appeal and/or in any bankruptcy proceeding.

(p)   **Break-Up Fee.** The parties hereby acknowledge and agree that Seller and the Property are currently subject to a chapter 11 bankruptcy case pending in the United States Bankruptcy Court for the Northern District of Illinois, and that the offer contained in this Agreement is or may be subject to the review and approval of said Court (the **"Court Approval"**) and may give rise to or result in a competitive bidding process or auction in which other parties can make offers for the purchase of the Property. If, in the course of any competitive bidding or auction conducted by the Court, any party other than Buyer is successful in obtaining the approval of the Court with respect to such party's offer and as a result Buyer is unable to acquire the Property, Buyer shall thereupon be entitled to a fee in consideration of the lost opportunity arising from Buyer's inability to acquire the Property in an amount equal to three percent (3%) of the Purchase Price (**"Break-Up Fee"**). In the event Buyer becomes entitled to the Break-Up Fee, Buyer shall have the right to record a memorandum of this Agreement against the Property memorializing Buyer's right to the Break-Up Fee and shall cause such memorandum to be released upon receipt of the Break-Up Fee. The obligation of Seller to pay the Break-Up Fee shall survive any termination of this Agreement.

(q)   **Tax Deferred Exchange.** Either party may elect to exchange, for other property of like kind and qualifying use within the meaning of Section 1031 of the Internal Revenue Code of 1986, as amended, title in the Property. Each party expressly reserves the right to assign its rights, but not its obligations, hereunder to a qualified intermediary as provided in Internal Revenue Code Reg. 1.103(k)-1(g)(4) on or before the Closing Date. The parties agree to reasonably cooperate fully with each other to accomplish such an exchange provided that the cooperating party shall not be subject to any cost or liability as a result of such like kind exchange. The exchanging party shall pay all costs and advance all funds required in connection with such exchange and shall indemnify, defend, and hold the cooperating party harmless from all claims, damages, liabilities, costs and expenses (including, but not limited to reasonable legal fees) in connection with such exchange. The cooperating party shall in no event be required to take title to the exchanged property. The provisions of this subsection 15(q) shall survive the Closing or any earlier termination of this Agreement.

(r)    <u>Waiver of Jury Trial</u>.    TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HEREBY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREIN.

(s)    <u>Limitation of Liability</u>.    Notice is hereby given that all persons dealing with Seller shall look to the assets of Seller for the enforcement of any claim against Seller, as none of the managers or members of Seller assume any personal liability for obligations entered into by or on behalf of Seller.

(t)    <u>Entirety and Amendments</u>.    This Agreement embodies the entire agreement between the parties and supersedes all prior agreements and understandings relating to the Property except for any confidentiality agreement binding on Buyer, which shall not be superseded by this Agreement.    This Agreement may be amended or supplemented only by an instrument in writing executed by the party against whom enforcement is sought.

*[BALANCE OF PAGE INTENTIONALLY LEFT BLANK –
SIGNATURES APPEAR ON FOLLOWING PAGE]*

**SELLER:**

**800 SOUTH WELLS PHASE II, LLC,** an Illinois
limited liability company

By:_____
    Nicholas S. Gouletas, Manager
Date:    _____

**BUYER:**

**CMK GROUP, LLC,** an Illinois limited liability
company

By:_____
    **Colin M. Kihnke,** Manager
Date:    _____

F

**SELLER:**

**800 SOUTH WELLS PHASE II, LLC**, an Illinois limited liability company

By:_____
     **Nicholas S. Gouletas**, Manager

Date: _____

**BUYER:**

**CMK GROUP, LLC**, an Illinois limited liability company

By:_____
     **Colin M. Kihnke**, Manager

Date: _____

## EXHIBIT A

### LEGAL DESCRIPTION

THAT PART OF BLOCKS 85 AND 86 IN THE SCHOOL SECTION ADDITION TO CHICAGO, BEING A SUBDIVISION OF SECTION 16,TOWNSHIP 39 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN AND OF THE FILLED OLD CHANNEL OF THE SOUTH BRANCH OF THE CHICAGO RIVER, ALL TAKEN AS TRACT, DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE EAST LINE OF BLOCK 86 AFORESAID WITH THE SOUTH LINE OF WEST POLK STREET; THENCE NORTH 89 DEGREES 53 MINUTES 33 SECONDS WEST, ALONG THE SOUTH LINE OF WEST POLK STREET, 10.00 FEET TO A POINT ON THE WEST LINE OF SOUTH WELLS STREET (SAID WEST LINE DRAWN 10.00 FEET WEST OF AND PARALLEL WITH THE AFOREMENTIONED EAST LINE OF BLOCK 86); THENCE SOUTH 0 DEGREES 03 MINUTES 37 SECONDS EAST ALONG THE WEST LINE OF SOUTH WELLS STREET AFORESAID, 388.20 FEET TO THE POINT OF BEGINNING OF THE PARCEL HEREIN DESCRIBED; THENCE SOUTH 89 DEGREES 56 MINUTES 23 SECONDS WEST PERPENDICULAR TO THE LAST DESCRIBED LINE, 199.78 FEET TO A POINT ON A LINE DRAWN 1.51 FEET (AS MEASURED PERPENDICULARLY) EAST OF AND PARALLEL WITH THE EASTERLY LINE OF A 20 FOOT PERMANENT ACCESS EASEMENT PER CIRCUIT COURT OF COOK COUNTY CASE NO. 76L11684 ENTERED JULY 1,1977; THENCE SOUTH 5 DEGREES 26 MINUTES 15 SECONDS EAST ALONG SAID PARALLEL LINE 108.05 FEET; THENCE SOUTH 84 DEGREES 33 MINUTES 45 SECONDS WEST PERPENDICULAR TO THE LAST DESCRIBED LINE, 141.50 FEET TO A POINT ON THE EAST LINE OF THE SOUTH BRANCH OF THE CHICAGO RIVER AS ESTABLISHED BY ORDINANCE PASSED JULY 8, 1926; THENCE SOUTH 5 DEGREES 26 MINUTES 15 SECONDS EAST ALONG SAID EAST LINE 164.974 FEET; THENCE SOUTH 89 DEGREES 55 MINUTES 45 SECONDS EAST 315.078 FEET TO A POINT ON THE WEST LINE OF SOUTH WELLS STREET AFORESAID; THENCE NORTH 0 DEGREES 03 MINUTES 37 SECONDS WEST ALONG THE WEST LINE OF SOUTH WELLS STREET AFORESAID, 285.80 FEET TO THE HEREINABOVE DESIGNATED POINT OF BEGINNING, ALL IN COOK COUNTY, ILLINOIS.

PINS: 17-16-401-013-0000
17-16-401-014-0000

ADDRESS OF PROPERTY: 800 S. WELLS ST., CHICAGO, ILLINOIS 60607

## EXHIBIT B

### PERMITTED EXCEPTIONS

1. REAL ESTATE TAXES FOR THE YEAR 2014, AND SUBSEQUENT YEARS, WHICH ARE NOT YET DUE AND PAYABLE.

2. SPECIAL SERVICE AREA NO. 12 ESTABLISHED BY ORDINANCE RECORDED AS DOCUMENT 91075841, AND ANY ADDITIONAL TAXES THAT MAY BECOME DUE AND PAYABLE UNDER THE TERMS OF SAID ORDINANCE AND SUBSEQUENT RELATED ORDINANCES.

3. AMENDED AND RESTATED GRANT AND RESERVATION OF EASEMENTS PERTAINING TO THE PROJECT COMMONLY KNOWN AS RIVER CITY, 800 SOUTH WELLS STREET, CHICAGO, ILLINOIS, DATED MARCH 14, 2001 AND RECORDED MARCH 28, 2001 AS DOCUMENT 0010245091, MADE BY RIVER CITY HOLDINGS, LLC, AN ILLINOIS LIMITED LIABILITY COMPANY, AMENDING AND RESTATING INSTRUMENT RECORDED MAY 12, 1999 AS DOCUMENT 99458079, AND THE TERMS, PROVISIONS, AGREEMENTS AND EASEMENTS CONTAINED THEREIN, INCLUDING THOSE RELATING TO COSTS AND COLLECTION OF AND LIENS FOR SAME.

   NOTIFICATION REGARDING AMENDED AND RESTATED GRANT AND RESERVATION OF EASEMENTS PERTAINING TO THE PROJECT COMMONLY KNOWN AS RIVER CITY, 800 SOUTH WELLS STREET, CHICAGO, ILLINOIS, DATED AS OF FEBRUARY 28, 2002 AND RECORDED MARCH 1, 2002 AS DOCUMENT 0020244622 MADE BY INVSCO MANAGEMENT COMPANY, INC., AN ILLINOIS CORPORATION.

4. RIGHTS OF THE UNITED STATES OF AMERICA, THE METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO, THE STATE OF ILLINOIS AND THE CITY OF CHICAGO IN AND TO SO MUCH OF THE LAND, IF ANY, AS MAY HAVE BEEN FORMED BY MEANS OTHER THAN NATURAL ACCRETIONS AND IN AND TO SO MUCH OF THE LAND, IF ANY, AS MAY BE COVERED BY THE WATERS OF THE SOUTH BRANCH OF THE CHICAGO RIVER.

5. GRANT DATED AUGUST 15, 1933 AND RECORDED AUGUST 2,1957 AS DOCUMENT 16974658 MADE BY THE BALTIMORE AND OHIO CHICAGO TERMINAL RAILROAD COMPANY, A CORPORATION OF ILLINOIS, TO THE SANITARY DISTRICT OF CHICAGO, A MUNICIPAL CORPORATION, RELATING TO THE PERPETUAL EASEMENT, PRIVILEGE, RIGHT AND AUTHORITY TO CONSTRUCT, RECONSTRUCT, REPAIR, MAINTAIN AND OPERATE AN INTERCEPTING SEWER UPON, UNDER AND THROUGH THE FOLLOWING:

   THAT PORTION OF BLOCK 85 IN SCHOOL SECTION ADDITION TO CHICAGO, A SUBDIVISION OF SECTION 16, TOWNSHIP 39 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, AND OF THE FILLED OLD CHANNEL OF

THE SOUTH BRANCH OF THE CHICAGO RIVER, INCLUDED IN A STRIP OF LAND 20 FEET WIDE, EXTENDING FROM THE CENTER LINE OF THE NEW CHANNEL OF THE SOUTH BRANCH OF THE CHICAGO RIVER TO A LINE WHICH IS 144.5 FEET EASTERLY OF, MEASURED AT RIGHT ANGLES, AND PARALLEL TO THE EASTERLY LINE OF NEW CHANNEL; THE CENTER LINE OF SAID STRIP BEING DESCRIBED AS FOLLOWS:

BEGINNING AT POINT ON THE WESTERLY LINE OF NEW CHANNEL OF SAID RIVER 21.5 FEET NORTHERLY OF THE NORTH LINE OF TAYLOR STREET MEASURED ALONG SAID WESTERLY LINE OF NEW CHANNEL; THENCE EASTERLY MAKING AN ANGLE OF 90 DEGREES WITH SAID EASTERLY AND WESTERLY LINES OF NEW CHANNEL; ALSO

THOSE PORTIONS OF BLOCKS 85, 86, 87 AND 88 IN SAID SCHOOL SECTION ADDITION TO CHICAGO, INCLUDED IN A 16 FOOT STRIP OF LAND EXTENDING FROM THE NORTHERLY LINE OF ABOVE DESCRIBED 20 FOOT STRIP OF LAND TO THE SOUTH LINE OF WEST HARRISON STREET; THE CENTER LINE OF SAID STRIP BEING DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN SAID CENTER LINE OF THE ABOVE DESCRIBED 20 FOOT STRIP OF LAND 130 FEET EASTERLY OF THE SAID EASTERLY LINE OF NEW CHANNEL; THENCE NORTHERLY ALONG A STRAIGHT LINE PARALLEL TO SAID EASTERLY LINE OF NEW CHANNEL, AND ITS EXTENSION NORTHERLY TO THE NORTH LINE OF POLK STREET; THENCE NORTHERLY ALONG A STRAIGHT LINE TO THE POINT OF INTERSECTION OF THE SOUTH LINE OF WEST HARRISON STREET AND THE CENTER LINE OF SOUTH FRANKLIN STREET; ALSO
ALSO A STRIP OF LAND 6.5 FEET WIDE LYING EASTERLY OF AND A STRIP OF LAND 1.5 FEET WIDE LYING WESTERLY OF, BOTH ADJOINING THE ABOVE-DESCRIBED 16 FOOT STRIP OF LAND AND EXTENDING FROM THE NORTHERLY LINE OF ABOVE-DESCRIBED 20 FOOT STRIP OF LAND TO A LINE WHICH IS 28 FEET NORTHERLY OF AND PARALLEL TO SAID NORTHERLY LINE OF SAID 20 FOOT STRIP OF LAND; ALSO

THAT PORTION OF SAID BLOCK 85 INCLUDED IN A STRIP OF LAND SIX FEET WIDE, EXTENDING FROM THE SOUTHERLY LINE OF THE ABOVE-DESCRIBED 20 FOOT STRIP OF LAND TO THE PRESENT NORTH LINE OF TAYLOR STREET, THE CENTER LINE OF SAID STRIP BEING DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE CENTER LINE OF ABOVE DESCRIBED 20 FOOT STRIP OF LAND 141.5 FEET EASTERLY OF SAID EASTERLY LINE OF NEW CHANNEL; THENCE SOUTHERLY ALONG A LINE PARALLEL TO SAID EASTERLY LINE OF NEW CHANNEL.

6.  PERMANENT EASEMENTS AS CONDEMNED BY THE METROPOLITAN
SANITARY DISTRICT OF GREATER CHICAGO, BY VESTING ORDER ENTERED
OCTOBER 21,1976, IN CASE NUMBER 76 L 11684.

THE LAND AFFECTED BY CASE NUMBER 76 L 11684 IS DESCRIBED AS
FOLLOWS:

(PARCEL B-PERMANENT EASEMENT)

THAT PART OF BLOCKS 85 AND 105 IN E. K. HUBBARD'S SUBDIVISION OF
BLOCKS 5, 60, 66, 75, 85, 104, 105, 108, 109, 111, AND 112 IN SCHOOL
SECTION ADDITION TO CHICAGO AND VACATED TAYLOR STREET
EXTENDED IN THE WEST HALF OF THE SOUTHEAST QUARTER OF
SECTION 16, TOWNSHIP 39 NORTH, RANGE 14 EAST, OF THE THIRD
PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS, DESCRIBED AS
FOLLOWS:

COMMENCING AT THE SOUTHWESTERLY CORNER OF SAID BLOCK 85, SAID
POINT ALSO BEING THE POINT OF INTERSECTION OF THE EASTERLY DOCK
LINE OF THE SOUTH BRANCH OF THE CHICAGO RIVER AS ESTABLISHED BY
CITY OF CHICAGO ORDINANCE DATED JULY 8, 1926 AND THE NORTHERLY
RIGHT OF WAY LINE OF VACATED TAYLOR STREET EXTENDED; THENCE
NORTH 07 DEGREE 01 MINUTES 41 SECONDS WEST ALONG SAID DOCK LINE
55.50 FEET TO THE POINT OF BEGINNING;
THENCE NORTH 82 DEGREES 58 MINUTES 19 SECONDS EAST, 87.00 FEET;
THENCE SOUTH 00 DEGREES 08 MINUTES 19 SECONDS WEST, 81.00 FEET;
THENCE SOUTH 86 DEGREES 08 MINUTES 19 SECONDS WEST, 77.01 FEET TO
AFORESAID EASTERLY DOCK LINE;
THENCE SOUTH 07 DEGREES 01 MINUTES 41 SECONDS EAST, ALONG THE
AFORESAID DOCK LINE 33.89 FEET;
THENCE NORTH 86 DEGREES 39 MINUTES 20 SECONDS EAST, 120.00 FEET;
THENCE NORTH 23 DEGREES 20 MINUTES 40 SECONDS WEST, 40.00 FEET;
THENCE NORTH 01 DEGREES 39 MINUTES 20 SECONDS EAST, 80.24 FEET;
THENCE NORTH 82 DEGREES 58 MINUTES 19 SECONDS EAST, 35.26 FEET;
THENCE NORTH 03 DEGREES 20 MINUTES 40 SECONDS WEST, 95.21 FEET;
THENCE SOUTH 81 DEGREES 39 MINUTES 20 SECONDS WEST, 162.05 FEET;
THENCE SOUTH 07 DEGREES 01 MINUTES 41 SECONDS EAST ALONG THE
AFORESAID DOCK LINE 91.29 FEET TO THE POINT OF BEGINNING.

ALL AS SHOWN ON EXHIBIT B ATTACHED THERETO AND MADE A PART
THEREOF.

(PARCEL A - PERMANENT ACCESS EASEMENT)

A 20 FOOT WIDE PERMANENT ACCESS EASEMENT LYING 10 FEET ON
EITHER SIDE OF A CENTER LINE IN THAT PART OF BLOCK 85 IN E. K.

HUBBARD'S SUBDIVISION OF BLOCKS 5, 60, 66, 75, 85, 104, 105, 108, 109, 111 AND 112 IN SCHOOL SECTION ADDITION TO CHICAGO, AND ALSO BLOCK 86 IN SAID SCHOOL SECTION ADDITION IN THE WEST HALF OF THE SOUTHEAST QUARTER OF SECTION 16, TOWNSHIP 39 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS, SAID CENTER LINE DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE NORTHERLY RIGHT OF WAY LINE OF ROOSEVELT ROAD (AS ESTABLISHED BY CITY OF CHICAGO ORDINANCE DATED APRIL 5, 1911) AND THE EASTERLY DOCK LINE OF THE SOUTH BRANCH OF THE CHICAGO RIVER (AS ESTABLISHED BY CITY OF CHICAGO ORDINANCE DATED JULY 8, 1926);
THENCE NORTH 01 DEGREE 42 MINUTES 47 SECONDS WEST ALONG SAID DOCK LINE, A DISTANCE OF 9.94 FEET;
THENCE NORTH 7 DEGREES 01 MINUTES 41 SECONDS WEST, CONTINUING ALONG THE AFORESAID DOCK LINE, A DISTANCE OF 1034.75 FEET;
THENCE NORTH 81 DEGREES 39 MINUTES 20 SECONDS EAST, A DISTANCE OF 130.00 FEET TO THE POINT OF BEGINNING OF THE AFOREMENTIONED CENTER LINE;
THENCE NORTH 7 DEGREES 01 MINUTES 41 SECONDS WEST, A DISTANCE OF 650.00 FEET, MORE OR LESS, TO A POINT OF TERMINATION OF THE SOUTHERLY RIGHT OF WAY LINE OF POLK STREET.

THE SIDE LINES OF SAID EASEMENT ARE TO BE LENGTHENED OR SHORTENED TO BEGIN ON SAID 130.00 FOOT LINE EXTENDED AND TO TERMINATE AT THE SOUTHERLY RIGHT OF WAY LINE OF POLK STREET.

ALL AS SHOWN ON THE PLAT MARKED EXHIBIT "A" ATTACHED THERETO AND MADE A PART THEREOF.

7.   GRANT OF EASEMENT IN FAVOR OF THE BALTIMORE AND OHIO CHICAGO TERMINAL RAILROAD COMPANY AS CREATED BY GRANT RECORDED OCTOBER 12, 1983 AS DOCUMENT 26818404, AS MODIFIED BY MODIFICATION RECORDED DECEMBER 22, 1983 AS DOCUMENT 26905308, GRANTING A 16 FOOT EASEMENT FOR SINGLE RAILROAD TRACK AND SIGNALIZATION OVER AND UPON A 16 FOOT STRIP OF LAND AS SET FORTH THEREIN.

8.   GRANT OF EASEMENT DATED FEBRUARY 26, 1988 AND RECORDED AS DOCUMENT 88089224 FROM FIRST WINTHROP PROPERTIES, INC. TO CABLE AND COMMUNICATIONS OF CHICAGO, INC. FOR A RIGHT OF WAY WITHIN THE LAND PURSUANT TO THE TERMS OF AN "OPERATION AGREEMENT: CABLE T.V. FOR RIVER CITY".

9.  TERMS AND PROVISIONS OF SPECIAL PERMIT #434-84 GRANTED MARCH 30, 1984 BY THE CITY OF CHICAGO RELATING TO THE CONSTRUCTION, INSTALLATION, MAINTENANCE AND USE OF CAISSONS OVER THE PUBLIC WAYS (EAST BANK OF THE SOUTH BRANCH OF THE CHICAGO RIVER) ADJACENT TO THE INSURED PREMISES.

10. ENCROACHMENT OF 15 PLANTERS, APPROXIMATELY 5 FEET BY 5 FEET EACH AND LOCATED ALONG THE EAST LINE OF THE LAND, ONTO THE ADJOINING PUBLIC WAY, AS SHOWN ON SURVEY NUMBER N-123761 A, B & E PREPARED BY NATIONAL SURVEY SERVICE, INC., DATED FEBRUARY 26, 2001.

11. RIGHTS RELATING TO CHICAGO FREIGHT TUNNELS RUNNING NORTHERLY AND SOUTHERLY THROUGH THE LAND AT VARIOUS LOCATIONS AS SHOWN ON SURVEY NUMBER N-123761 A, B & E PREPARED BY NATIONAL SURVEY SERVICE, INC., DATED FEBRUARY 26, 2001.

12. EASEMENT AGREEMENT FOR RETAINING WALL TO BE ENTERED INTO BY AND AMONG 800 SOUTH WELLS PHASE II, LLC, RIVER CITY PRIVATE RESIDENCES CONDOMINIUM ASSOCIATION, AN ILLINOIS NOT-FOR-PROFIT CORPORATION, WRT-MARC RC, LLC, AN ILLINOIS LIMITED LIABILITY COMPANY, AND RIVER CITY MARINA FACILITIES, L.L.C., AN ILLINOIS LIMITED LIABILITY COMPANY AND RECORDED FOLLOWING COURT APPROVAL.

# EXHIBIT 2

## FIRST AMENDMENT TO
## PURCHASE AGREEMENT

THIS **FIRST AMENDMENT TO PURCHASE AGREEMENT** ("**Amendment**") is made as of December 3, 2014, by and between **CMK GROUP, LLC,** an Illinois limited liability company, or its assignee or nominee ("**Buyer**") and **800 SOUTH WELLS PHASE II, LLC,** an Illinois limited liability company ("**Seller**").

Buyer and Seller have heretofore entered into that certain Purchase and Sale Agreement with an Effective Date of October 28, 2014 (the "**Purchase Agreement**"), for the acquisition of real property located at and commonly known as 800 South Wells Street and more particularly described therein. In the event of a conflict between the terms of the Purchase Agreement and the terms and conditions of this Amendment, the terms and conditions of this Amendment shall govern and control.

Buyer and Seller desire to amend the Purchase Agreement on the terms and provisions hereinafter contained.

1.    **Amendments**.

   (a)    Section 1-Purchase Price is hereby amended by deleting "***Four Million Eight Hundred Seventy Two Thousand and 00/100 Dollars ($4,872,000.00)***" and substituting therefor "***Seven Million Seven Hundred Fifty Thousand and 00/100 Dollars ($7,750,000.00)***".

   (b)    Subsection 8 (a) is hereby amended by adding the following at the end of (ii):

      *"provided that if, prior to Closing, Seller has not entered into an Easement Agreement reasonably acceptable to Buyer, then Buyer agrees to assume complete responsibility for negotiating such Easement Agreement and that a fully agreed-upon (or executed) Easement Agreement is not a condition to Closing;"*

2.    **Miscellaneous**.

   (a)    This Amendment may be executed in multiple counterparts (no one of which need contain the signature of more than one party hereto so long as each party hereto executes at least one such counterpart), each of which shall be deemed an original and all of which, when taken together shall constitute and be one and the same instrument.

   (b)    This Amendment shall be governed by and construed and enforced in accordance with the laws of the State of Illinois.

(c)     This Amendment shall extend to, be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns, heirs and legal representatives.

(d)     The Purchase Agreement is hereby ratified and confirmed and shall remain unmodified and in full force and effect except as herein expressly amended.

(e)     All capitalized terms used in this Amendment and not defined herein shall have the meaning ascribed to such terms in the Purchase Agreement.

*[BALANCE OF PAGE INTENTIONALLY LEFT BLANK –
SIGNATURES APPEAR ON FOLLOWING PAGE]*

**IN WITNESS WHEREOF** the parties have executed this First Amendment to Purchase Agreement as of the date first written above.

SELLER:

**800 SOUTH WELLS PHASE II, LLC**, an Illinois limited liability company

By:_____

       **Nicholas S. Gouletas**, Manager

Date: _____

BUYER:

**CMK GROUP, LLC**, an Illinois limited liability company

By:_____

       **Colin M. Kihnke**, Manager

Date: _____